## LAURENS MILLS v. M. M. C. INC., AND OTHERS.

159 N. W. (2d) 781.

June 14, 1968—No. 40,873.

*Weinberg & Litman,* for appellants.

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch, John M. Donovan,* and *Bruce Kruger,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a summary judgment entered in favor of plaintiff.

The dispute arises out of a number of sales of textile fabrics by Laurens Mills, a New York resident, to M. M. C., Inc., and Minnesota Woolen Company, a partnership, both located in Duluth, Minnesota. The goods were purchased on a written order showing that the sale was made to "M M C Inc. and/or Minnesota Woolen Co. 514 W. First St. Duluth 2, Minn." The written order was signed by a representative of M. M. C., Inc. A dispute arose as to the quality of the goods, whereupon Laurens Mills filed a demand for arbitration on October 8, 1963, addressed to the Mutual Adjustment Bureau of the Cloth and Garment Trades, Inc., of New York City. Copies of this demand were mailed to M. M. C., Inc., and Minnesota Woolen Company, both at 514 West First Street, Duluth. On October 14, 1963, the adjustment bureau sent a letter addressed to M. M. C., Inc., and Minnesota Woolen Company requesting them to "file your complaint together with all data pertinent to the controversy. Said information is to be submitted to the Bureau, in duplicate, within seven days."

Directly above the signature of the buyer on the written order under which these goods were sold, we find the following:

"This order is subject to all the terms and conditions on the face and reverse side hereof *including arbitration;* it supersedes Buyer's order form, if any. This order shall become a contract either (a) when signed and delivered by Buyer to Seller and accepted by Seller at its home office, evidenced by the signature of Seller or Seller's Agent, or (b) when Buyer accepts delivery of all or any part of the goods herein described. Such contract shall constitute the entire agreement between the parties, shall be construed and enforced under the laws of the State of New York, and no modification shall be effective unless in writing, * * *." (Italics supplied.)

On the reverse of the sales order appears paragraph 12, which reads:

"ARBITRATION. Controversies with respect to the condition or quality of any goods delivered hereunder shall be referred to the Mutual Adjustment Bureau of the Cloth and Garment Trades of the City of New York, whose determination shall be conclusive. All other controversies arising out of or relating to this contract, or any modification thereof, shall be settled by arbitration in the City of New York in accordance with the rules then obtaining of the American Arbitration Association. The three arbitrators sitting in any such controversy shall have no power to alter or modify any express provision of this contract or to render any award which by its terms effects any such alteration or modification. *The parties consent to the jurisdiction of the Supreme Court of the State of New York for all purposes in connection with such arbitration;* and further consent that any process or notice of motion or of other application to said Court or a Justice thereof may be served outside the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed." (Italics supplied.)

It appears that after notice of the demand for arbitration, some communications were conducted between Laurens Mills and defendants through their attorneys. On December 9, 1963, the attorney for defendants wrote a letter to the adjustment bureau, stating:

"This letter will confirm our phone conversation of this date. Unless advised to the contrary, my clients and I will be in New York to arbitrate the above-entitled matter on Monday, January 27, 1964.

"We appreciate your cooperation in arranging for this setting."

On the date mentioned, the attorney for defendants appeared in New York at the place set for the arbitration proceeding. He announced that he was appearing specially to object to the jurisdiction of the arbitrator, stating that a court first must decide whether the parties had knowingly consented to arbitration. The arbitrator said he was not a lawyer but invited the parties to state their cases. According to defendants' attorney, he agreed to do so after the arbitrator assured him he could state his position without prejudice to his special appearance. Both parties then proceeded with the presentation of the evidence on the merits of the issues involved.

On March 14, 1964, the arbitrator rejected defendants' contentions and found in favor of plaintiff in the sum of $12,794.98 plus interest and costs. Plaintiff then petitioned the New York Supreme Court to confirm the arbitrator's award. In that proceeding defendants again appeared and objected to the jurisdiction of the arbitrator and of the court. The court found against defendants, holding, among other things, "that the arbitrator had jurisdiction to render the said award and that this Court has jurisdiction to confirm same and enter judgment thereon." No appeal was taken from the decision of the New York Supreme Court.

Thereafter, plaintiff brought action in the St. Louis County District Court on the judgment so entered in New York. Defendants answered, making substantially the same claims they had made before the New York court. The St. Louis County District Court granted summary judgment against defendants on the theory that the judgment of the New York court was entitled to full faith and credit in our state.

The issues raised here are whether there were such fatal defects in the designation of the parties in the New York court and before the arbitrator as to render the judgment invalid, and whether the New York judgment is subject to collateral attack on the grounds that the arbitrator and the Supreme Court of New York lacked jurisdiction over the parties. Defendants also raise the question as to whether there was such fraud involved as to invalidate the judgment.

■ With respect to the defects in the designation of the parties, it

does appear that before the arbitrator the parties were designated as M. M. C. and/or Minnesota Woolen Company, without indication that the former was a corporation and the latter a partnership. In the New York Supreme Court the designation M. M. C., Inc., indicated that it was a corporation, but the designation of Minnesota Woolen Company remained as it was before the arbitrator. In the district court in Minnesota, the parties were designated as M. M. C., Inc., and Minnesota Woolen Company, a partnership. In addition, the complaint listed the names of individual surviving partners, apparently due to the fact that one of the partners had died (leaving the partnership dissolved), and the executors of his estate were joined as parties-defendant.

Defendants rely primarily upon the old case of Lawrence v. Willoughby, 1 Minn. 65 (87), decided in 1852. We see no need to discuss the facts in that case. Even if it was good law at the time it was decided, it is no longer law here. Rule 9.01, Rules of Civil Procedure, provides in part:

"It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of a partnership or an organized association of persons that is made a party."

Under this rule it is not fatal to fail to identify a partnership as such, and we cannot see that it is fatal to omit something not required in the first place and then add it later. Under this rule, it is not necessary to identify a corporation as such. If the legal existence of a corporation or partnership is to be litigated, it must be raised by the party who challenges its right to sue or be sued. Rule 61 provides that the court is to "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." There is no showing whatsoever here of any prejudice to the defendants by failure to designate whether the one company was a partnership and the other a corporation or not.

■ The main thrust of defendants' argument relates to the validity of the judgment, due to lack of jurisdiction over the defendants by the arbitrator and the Supreme Court of New York. Apparently defendants contend that because the provisions for arbitration appear in small print on the back of the order signed by them, they had no knowledge that

they had agreed to arbitrate disputes, if any arose. We see little merit to this argument. On the face of the order form, directly above the signature of defendants' representative, appears a statement that the order is subject to the terms and conditions on the face and reverse side thereof, including arbitration. Certainly, with that warning on the face of the instrument, it was incumbent upon the buyer to read the terms of the agreement under which the goods were purchased. The trial court relied mainly on Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 92 L. ed. 1429. In that case a wife moved from her Massachusetts home to Florida and sued for divorce after expiration of the 90-day period of residence required under Florida law. The husband personally appeared at the hearing. The wife introduced evidence to establish the bona fides of her Florida residence. The court found she was a resident of that state and granted the divorce. She married again and returned to Massachusetts, where the husband collaterally attacked the divorce decree, apparently to gain control of certain property. The Massachusetts court, holding the wife was never domiciled in Florida, granted the relief requested. The United States Supreme Court reversed. "[T]he requirements of full faith and credit," it said, "bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister State where there has been participation by the defendant in the divorce proceedings, where the defendant has been accorded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the State which rendered the decree." 334 U. S. 351, 68 S. Ct. 1091, 92 L. ed. 1436.

We think that is a rule that we must now follow. Not only did defendants have an opportunity to litigate the issue of the court's jurisdiction in New York, but they actively participated in doing so. The New York court found against defendants on this issue, and as long as that decision stands in the absence of an appeal, it must be given full faith and credit here.

Defendants rely for the most part upon Commercial Factors Corp. v. Kurtzman Bros. 131 Cal. App. (2d) 133, 280 P. (2d) 146. There are many distinguishing features between the Commercial Factors case and the one now before us. There, as here, the contention was made

that the purchaser was unaware of an arbitration clause in the contract under which it purchased goods. The opinion of the court shows that after the purchaser selected certain goods, a salesman took a pad of order blanks and wrote thereon the styles selected. Three of the four orders were signed by one of the purchaser's partners, but were not signed by the seller. The fourth order blank was not signed by either buyer or seller. The order blanks contained the provisions (131 Cal. App. [2d] 134, 280 P. [2d] 146):

"This order becomes a contract only when signed by the seller or confirmed in writing by the seller. * * * The undersigned hereby orders the above goods upon the terms as stated, including the terms and conditions printed on the back of the contract and forming a part hereof."

The provision for arbitration was contained on the back. When arbitration was sought in New York, the buyer neither appeared before the arbitrator nor in the court upon confirmation. Under these circumstances the California court held that the judgment of the New York court was not binding upon the buyer, who was not a resident of New York. Contrary to the situation existing in Commercial Factors, in the present case both parties signed the order.

There appeared on the front of the order blank in this case a warning that the parties agreed to the provisions on the back and to arbitration. They took part in the arbitration before the arbitrator, and they appeared in the court upon petition for confirmation. While it is true that they state that they appeared specially, they participated in the trial of the issues on the merits and the New York court found against them on the jurisdictional issue. Under the circumstances of this case, we are controlled by the decision in Sherrer.

As far as the jurisdiction of the arbitrator is concerned, under New York law, which the parties agreed would be controlling, an appearance and participation on the merits before the arbitrator is deemed to be a waiver of any jurisdictional objections as to the arbitration. New York Civil Practice Law and Rules (hereinafter CPLR) §§ 7503 and 7511; Samincorp South American Minerals & Mdse. Corp. v. Lewis, 337 Mass. 298, 149 N. E. (2d) 385 (enforcing a New York arbitration judg-

ment); Matter of National Cash Register Co. v. Wilson, 8 N. Y. (2d) 377, 208 N. Y. S. (2d) 951, 171 N. E. (2d) 302; Matter of McGovern v. Janel's Music Corp. 18 App. Div. (2d) 897, 237 N. Y. S. (2d) 799; Matter of Bay Iron Works, Inc. v. Eisenstein, 17 App. Div. (2d) 804, 232 N. Y. S. (2d) 746; Matter of Duskin Sales, Inc. v. Rosenberg Bros. of Oregon, 38 Misc. (2d) 210, 237 N. Y. S. (2d) 664; Matter of Harris v. East India Trading Co. 16 Misc. (2d) 87, 144 N. Y. S. (2d) 894.

Thus it appears that when defendants proceeded to take part in the arbitration by submitting evidence on the merits, they waived jurisdictional objections to the arbitration if there were any. When they appeared in the New York Supreme Court and litigated the jurisdictional issue, they were bound by the judgment of that court on the question of its jurisdiction in the absence of an appeal. The judgment having become final in New York, it must be given full faith and credit here, and the trial court correctly granted summary judgment.

█ Defendants also seek to invoke fraud on the part of plaintiff in failing to comply with CPLR, § 7503(c). We see no need of discussing this issue. No fraud has been shown nor has any prejudice to defendants been shown, if there was any slight deviation from the strict requirements of the statute. Defendants' appearance in the arbitration proceeding and in the Supreme Court of New York constitutes a waiver of any failure to strictly comply with the New York rules.

Affirmed.