(No. 64994.—

RONALD K. HARRIS, JR., Appellee, v. AL WALKER, d/b/a Ky-Wa Acres, Appellant.

*Opinion filed February 11, 1988.*

Francis J. Lynch and Gary S. Schwab, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

Anthony C. Raccuglia & Associates, of Peru (Louis L. Bertrand, of counsel), and Sherman, Gray & Lloyd, of Chicago (Thayne D. Gray and Kurt D. Lloyd, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Plaintiff, Ronald K. Harris, Jr., was injured when he fell off a horse he had rented from the Ky-Wa Acres riding stables, owned and operated by the defendant, Al Walker. Filing a two-count personal injury action in Bureau County circuit court, plaintiff based count I upon section 16 of the Animal Control Act (Ill. Rev. Stat. 1983, ch. 8, par. 366), and grounded count II on a common law negligence theory. Defendant moved for summary judgment, presenting evidence that plaintiff signed and fully understood an exculpatory agreement. Based on this release and plaintiff's deposition testimony that he read and understood its terms before signing it, the circuit judge granted the defendant's motion, ruling that the release barred both counts in plaintiff's suit.

On appeal, the Appellate Court, Third District, reversed the judgment and remanded to the circuit court for trial. A brief review of the three separate opinions filed by the three-judge panel demonstrates how divided the court's decision was. One of the appellate court judges holding for reversal stated that the exculpatory contract could not release defendant from liability under the Animal Control Act because it violated the State's

public policy inherent in the Act. Another judge, concurring only in the reversal, opined that the Animal Control Act was not applicable, but that plaintiff had pled allegations of fraud sufficient to abrogate the release from negligence liability. The dissenting judge suggested that the only question on appeal was whether the release violated public policy, and he concluded that "the statute does not appear to be intended to protect the person who voluntarily encounters a known risk and agrees in writing to assume the risk." (152 Ill. App. 3d 384, 388 (Scott, J., dissenting).) This split decision is in conflict with *Clark v. Rogers* (1985), 137 Ill. App. 3d 591 (finding that the legislature did not intend to preclude assumption of risk defense to Animal Control Act claim in case where plaintiff was injured by horse she was hired to train), and *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158 (ruling that the Act was not intended to abolish the defense of assumption of the risk in suit brought by horseshoer against owner of horse that kicked him). Exercising our discretion under Rule 315(a) (107 Ill. 2d R. 315), we granted the defendant's petition for leave to appeal.

## Count I. The Animal Control Act Claim

Section 16 of the Animal Control Act, on which plaintiff's first count is based, provides:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." (Ill. Rev. Stat. 1983, ch. 8, par. 366.)

The legislative history of the statute leads us to conclude that our legislature did not intend to create a statutory cause of action for a renter of a horse like the plaintiff in this case. The original version of this statute was

passed in 1949 and applied only to dogs. (Ill Rev. Stat. 1953, ch. 8, par. 12d.) The apparent purpose of the legislation was modest: to reduce the burden on dog-bite plaintiffs by eliminating the "one-bite rule"—the common law requirement that a plaintiff must plead and prove that a dog owner either knew or was negligent not to know that his dog had a propensity to injure people. *Beckert v. Risberg* (1965), 33 Ill. 2d 44, 46.

Enacting the Animal Control Act in 1973, the legislature amended this "dog-bite statute" to cover "other animals." We have found nothing, nor has plaintiff cited anything, that suggests that the underlying purpose of this amendment should not be as narrowly construed as that of its predecessor statute.

In deciding whether the plaintiff stated a valid cause of action under the statute, we start from our well-established presumption that a statute that represents a departure from the common law should be narrowly construed in favor of those who are subject to the statute's operation. (*In re W.W.* (1983), 97 Ill. 2d 53, 57; *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 220.) Accordingly, we believe that the legislature intended only to provide coverage under the statute for plaintiffs who, by virtue of their relationship to the owner of the dog or other animal or the lack of any such relationship, may not have any way of knowing or avoiding the risk that the animal poses to them. This interpretation is consistent with the emphasis the statute places on lack of provocation and plaintiff's peaceable conduct in a place in which he is legally entitled to be.

The plaintiff's relationship to the defendant in this case excluded the plaintiff from the coverage of the statute. Plaintiff rented the horse from defendant's stable and claimed to fully understand and accept the risks of horseback riding. By establishing this relationship, the plaintiff took himself out of the class of persons the leg-

islature intended to protect. We therefore hold that where a person rents a horse and understands and expressly accepts the risks of using the horse, he cannot recover damages from the person who rented the horse to him under section 16 of the Animal Control Act.

### Count II. Negligence

Though the plaintiff apparently conceded that exculpatory contracts generally insulate defendants from liability on common law negligence claims (152 Ill. App. 3d at 387), we reaffirm that under certain circumstances exculpatory contracts may act as a total bar to a plaintiff's negligence claim. We start from our often-repeated axiom that "[p]ublic policy strongly favors freedom to contract [citation], as is manifest in both the United States Constitution and our constitution." (*McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.* (1983), 95 Ill. 2d 68, 72.) Regarding contracts that shift the risks of one's own negligence to another contracting party, the general rule is to enforce exculpatory contracts "unless (1) it would be against a settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement." (*Jackson v. First National Bank* (1953), 415 Ill. 453, 460; see also *O'Callaghan v. Waller & Beckwith Realty Co.* (1958), 15 Ill. 2d 436, 437; *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 87.) More recently, we observed that exculpatory clauses are not favored and must be strictly construed against the benefitting party, particularly one who drafted the release. *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 395.

In this case, defendant's sign-in sheet contained the following release agreement:

> "Your signature below indicates that you have read the posted rules and will abide by them. Also, your signature

shall release Ky-Wa Acres and employees of any liabilities you may incur while on the premises or for any injury which may result from horseback riding. If your signature is not reliable please do not sign or ride."

In addition, the prominently posted rules stated that riders rode at their own risk. Plaintiff stated in his deposition that he was an experienced rider and that he understood the release he signed. Just as this court has noted that the racing of automobiles entails certain risks of injury that are obvious to experienced drivers (*Schlessman v. Henson* (1980), 83 Ill. 2d 82, 86), so too horseback riding involves various risks of injury that are plain to experienced riders. As the court stated, "[t]he parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable." (*Schlessman v. Henson*, 83 Ill. 2d 82, 86.) The court also concluded that when the parties adopt broad language in a release, it is reasonable to interpret the intended coverage to be as broad as the risks that are obvious to experienced participants. Even if the release in this case is strictly construed against the defendant, its terms are broad enough to cover the situation at issue here. We believe that only the most inexperienced of horseback riders would not understand that under certain circumstances a horse may become spooked or "side-shocked" and cause a rider to fall from the horse. Yet plaintiff was an experienced rider who claimed to understand the release he signed.

Our review of the record and search for public policies that might be violated by the enforcement of this release have failed to uncover any policy reasons not to hold this release effective. In fact, we note that the legislature has dealt with liability for injuries caused by animals in the Animal Control Act, and they did not choose to preclude the use of exculpatory contracts. In sum, we

do not find any public policy in conflict with upholding the defendant's contractual release from negligence liability.

In addition to finding no public policy that is offended by enforcing the exculpatory contract here, we see nothing in the relationship between the contracting parties that suggests that the exculpatory agreement should not be enforced. This is not a case where the plaintiff is in an unequal bargaining position. Again, *Schlessman* is instructive, for in that case it was stated, "[w]hile it is obvious that plaintiff would not have been allowed to use the racetrack had he not signed the release, plaintiff was under no economic or other compulsion to sign the release in order to engage in amateur auto racing." (*Schlessman v. Henson*, 83 Ill. 2d at 87.) Similarly, this plaintiff voluntarily chose to enter into a relationship with the defendant whereby plaintiff agreed to accept the risks associated with horseback riding. Therefore, the plaintiff " 'will not be heard to complain of a risk which he has encountered voluntarily, or brought upon himself with full knowledge and appreciation of the danger.' " *Vanderlei v. Heideman* (1980), 83 Ill. App. 3d 158, 162-63, quoting Prosser, Torts 523 (4th ed. 1971).

Clarification is also required with regard to one of the appellate court judges' suggestion that plaintiff's amended complaint alleged fraud "sufficient to vitiate what would otherwise be a valid release." (152 Ill. App. 3d at 387 (Heiple, J., specially concurring).) In order to state a cause of action for fraud, we require plaintiffs to allege that defendant made a false representation of a material fact knowing or believing it to be false and thereby intending to induce plaintiff to act. (*Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 249.) Count II of the amended complaint alleges only negligence, that "defendant knew, or in the exercise of reasonable care, should have known [that the horse] had a

propensity to become 'side-shocked,' creating an unreasonable dangerous condition to the person riding said horse.'' We do not consider this to be an allegation that defendant knowingly misrepresented to the plaintiff the dangers inherent in horseback riding or peculiar to the horse he rented in an effort to induce plaintiff to sign the release.

For the foregoing reasons, we reverse the judgment of the appellate court, and affirm the decision of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*