SANDY BIEN, Plaintiff-Appellant, v. FOX MEADOW FARMS LTD. *et al.*, Defendants-Appellees.

Second District   No. 2—90—0844

Opinion filed June 28, 1991.—Rehearing denied August 1, 1991.

Carr & O'Rourke Associates, of Chicago (Glenn J. Jazwiec, of counsel), for appellant.

Aries, Hoyt & Taden, of Chicago (Lisa Lantero, of counsel), for appellees.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Sandy Bien, appeals from an order granting the defendants, Fox Meadow Farms Ltd. (Fox Meadow), Elizabeth A. Yackley, and Patty Johnson, summary judgment. The trial court found that the plaintiff released her right to recover in negligence against them. The plaintiff's contested issues can be summarized as whether the release that she signed relieves the defendants of liability. We affirm.

The facts necessary to this appeal are as follows. The plaintiff had been taking horseback riding lessons weekly at Fox Meadow from August 2, 1986, until the date of her injury. On August 2, 1986, the plaintiff was told to sign a document "for insurance purposes." She did not remember reading the document before signing it, but thought that she needed to sign it so that Fox Meadow could "add her to their insurance." The document, entitled *"RELEASE,"* contained the following language:

"The undersigned being of lawful age *** desires to enter upon the premises of FOX MEADOW FARM LIMITED, *** and/or to use horses and the facilities either owned or controlled by the owners of said FOX MEADOW FARM LIMITED, and being duly aware of the risk of injury and hazards inherent upon entering upon said premises and/or the riding of horses ***, hereby elects voluntarily to enter upon said premises and to participate in said hazardous activities.

Therefore, each of the undersigned for and in consideration of their permission to enter upon said premises, ride said horses and/or participate in said equestrian activities, do hereby voluntarily assume all risks of loss, damage, or personal injury, including death, that may be sustained by any or each of the undersigned which may hereinafter occur on account of, or in any way growing out of *** said equestrian activities.

The undersigned further expressly understands and agrees to indemnify and hold harmless FOX MEADOW FARM LIMITED, Elizabeth A. Yackley, *** their employees and agents, against any and all further claims or damages, costs or ex-

penses incurred by FOX MEADOW MEADOW FARM LIM-
ITED, their employees and agents, as a result of any accident,
injury or property loss which may incurr [sic] while the under-
signed is upon said premises or is engaged in equestrian activi-
ties and which may result from the negligence of the under-
signed, FOX MEADOW FARM LIMITED, Elizabeth A.
Yackley, *** and their employees, agents, third parties or any
combination thereof.

*  *  *

CAUTION: READ BEFORE SIGNING."
There was a lesson schedule on the back of the document.

The plaintiff signed the document, and defendant Yackley signed
above a line designated as "Witness." The plaintiff then paid a $15
fee for the day's activities. She never signed another document during
the time that she took lessons, but continued to pay $15 each time she
entered Fox Meadow's property.

On February 28, 1988, the plaintiff had a lesson. Defendant John-
son, an independent contractor for Fox Meadow and the plaintiff's in-
structor, directed her to ride a horse named Scout. Although the
plaintiff did not want to ride Scout because he had a tendency to
thrash his head after a jump, she did ride Scout to avoid having to
ride Sunny, a horse that the plaintiff found to be "reckless and unpre-
dictable."

Just after her first jump, the plaintiff observed that Scout
thrashed his head. She told Johnson about her problem with the
horse. Johnson told her to pull the reins tighter after the jump. After
her second jump, the plaintiff pulled the reins tighter, but again ob-
served that Scout thrashed his head. Johnson then told her to pull the
reins even tighter after the jump. As the plaintiff was completing her
third jump, she adhered to Johnson's suggestion and pulled even
tighter on the reins. She completed the jump and rode approximately
20 feet past it. Scout began violently thrashing his head and ulti-
mately threw the plaintiff off his back. She fell and was injured.

The plaintiff brought this case, initially against Fox Meadow and
Yackley. She later amended her complaint to include Johnson. The
defendants moved for summary judgment, which the trial court
granted. After the trial court denied the plaintiff's motion for recon-
sideration, this appeal followed.

Before reaching the issue on appeal, we must first address the
plaintiff's motion to strike the defendants' statement of facts. (See
134 Ill. 2d R. 341(e)(6).) We have taken the motion with this case, and
we deny it.

■ The plaintiff argues that the defendants have inaccurately portrayed the facts of this case. She points to a sentence in the defendants' statement of facts that does not have a record citation. The plaintiff then contends that a phrase, "the release *clearly* states," in the defendants' statement of facts is argumentative. She further finds fault in the defendants' "bolding" certain words in the release. We find that the statement of facts does not hinder or preclude review. (See *Oakleaf v. Oakleaf & Associates, Inc.* (1988), 173 Ill. App. 3d 637, 646.) We deny the plaintiff's motion to strike.

We now turn to the substantive issues raised in the appeal. They can be summarized as whether the trial court properly found that the release relieved the defendants of liability.

■ Exculpatory agreements are generally enforceable unless their enforcement would be against the settled public policy of this State or there is something in the social relationship of the parties which militates against upholding the agreement. (*Falkner v. Hinckley Parachute Center, Inc.* (1989), 178 Ill. App. 3d 597, 602.) We note that a release to go horseback riding has been upheld, with the court's reasoning that the risk of being thrown from a horse is apparent to all but the most inexperienced of horseback riders. See *Harris v. Walker* (1988), 119 Ill. 2d 542, 549-50.

The plaintiff first argues that the release had a fixed duration. According to that argument, the release terminated when the plaintiff left the Fox Meadow premises on August 2, 1986, the day that she signed it.

■ The trial court, however, found that the language of the release, as a matter of law, provided that the release was to be effective each time that the plaintiff entered Fox Meadow's property, even though the release does not specify its duration. Where no definite time is fixed during which a contract continues, it is terminable at the will of either party. (*Gage v. Village of Wilmette* (1924), 315 Ill. 328, 331; *First National Bank v. Sylvester* (1990), 196 Ill. App. 3d 902, 910.) The construction of a release is governed by the rules of law for contracts. *Polo National Bank v. Lester* (1989), 183 Ill. App. 3d 411, 414.

■ Here, after the plaintiff signed the release, neither party elected to terminate it. Further, the language of the release states that the plaintiff assumed "all risks of loss *** that may be sustained by *** each of the undersigned which may *hereinafter* occur on account of, or in any way growing out of *** said equestrian activities." (Emphasis added.) We find that the release continued until either party exercised its right to terminate it. Since the release had not

been terminated by either party, we therefore agree with the trial court that the release continued to be effective on the day of the accident.

■ The plaintiff next argues that her injuries do not fall within the scope of the release.

In *Harris v. Walker* (1988), 119 Ill. 2d 542, the plaintiff rented a horse from the defendants' riding stables. (119 Ill. 2d at 545.) The horse became "spooked or 'side-shocked' " and threw the plaintiff. (119 Ill. 2d at 549.) Before riding the horse, the plaintiff signed an exculpatory agreement relieving the defendants from liability that might be incurred "while on the premises or for any injury which may result from horseback riding." (119 Ill. 2d at 548-49.) The trial court granted summary judgment in the defendants' favor. The appellate court reversed the judgment, but the supreme court affirmed the trial court's granting of summary judgment. (119 Ill. 2d at 545.) The supreme court found the terms of the release to contain broad language which would encompass the plaintiff's injury. (119 Ill. 2d at 549.) We find the *Harris* case to be controlling here.

The plaintiff argues that the *Harris* case is distinguishable from this case. She first argues that, unlike in *Harris* where the plaintiff was an experienced rider, she classified herself as a "beginner." We note that she had been taking horseback riding lessons from the defendants for over two years before the accident. Further, the *Harris* court found "that only the most inexperienced of horseback riders would not understand that under certain circumstances a horse may *** cause a rider to fall from the horse." (119 Ill. 2d at 549.) As the trial court correctly found here, the plaintiff was not "the most inexperienced of horseback riders." She, like the *Harris* plaintiff, could appreciate the risk of being thrown from a horse.

The plaintiff then argues that *Harris* is inapplicable since the plaintiff there merely rented a horse, while she was on Fox Meadow's property for riding lessons. Again, we see no basis to distinguish the case. The question is whether the plaintiff could appreciate the risk that a horse could throw her. The release, as worded, is broad enough to encompass "any accident, injury or property loss."

Finally, the plaintiff argues that *Harris* is inapplicable here since the plaintiff there admitted that he read and fully understood the release that he signed. The plaintiff here stated that she may neither have read the release before signing, nor understood that she was signing a release.

■ A release or exculpatory agreement may be set aside if there is either fraud in the execution or fraud in the inducement. (*Rudolph*

*v. Santa Fe Park Enterprises, Inc.* (1984), 122 Ill. App. 3d 372, 374.) Fraud in the execution occurs where the party was induced to sign the agreement not knowing it was a release, but believing it to be another type of document; fraud in the inducement is where the party is induced to enter into the release by false representations by the other party. (*Koch v. Spalding* (1988), 174 Ill. App. 3d 692, 697.) A party has a general duty to read documents before he signs them, and his failure to do so will not render the document invalid. *Rudolph,* 122 Ill. App. 3d at 375-76.

■■ The plaintiff here argues that she thought that she signed the release so that she could be included in Fox Meadow's insurance coverage. However, she still failed to read the document even though the words, "CAUTION: READ BEFORE SIGNING," appeared just above her signature. Further, the document is captioned *"RELEASE."* The plaintiff has not raised a question of fact that she was fraudulently induced to sign the release. The plaintiff is not entitled to relief simply because she has failed to exercise reasonable care before signing the release. See *Rudolph,* 122 Ill. App. 3d at 376.

By following *Harris,* we reach the same conclusion that the trial court did, *i.e.,* that the broad language of the release relieves the defendants from liability. We find that the trial court did not err in granting the defendants' motion for summary judgment.

We quickly dispose of the plaintiff's three remaining arguments. The arguments are the following: (1) whether defendant Yackley, who signed the release under the heading of "Witness," could "accept" the release on behalf of all the defendants; (2) whether the defendants' motion for summary judgment is inadequate because the defendants initially failed to attach a copy of both sides of the release; and (3) whether the trial court erred in finding that defendant Johnson is covered under the release.

The plaintiff offers no case citation to support her arguments. Thus, she has not complied with Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). We are entitled to be cited pertinent authorities (see *Lazy 'L' Family Preservation Trust v. First State Bank* (1988), 167 Ill. App. 3d 624, 627), and we therefore reject these arguments.

The decision of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and INGLIS, JJ., concur.