BETH SWIERKOSZ, Plaintiff-Appellant, v. STARVED ROCK STABLES, Defendant-Appellee.

Third District   No. 3—92—0301

Opinion filed January 5, 1993.

R.J. Lannon, Jr., of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle, and Herbolsheimer, Lannon, Henson, Duncan & Reagan, of Ottawa (Michael C. Jansz, of counsel), for appellant.

Myers, Daugherity, Berry & O'Conor, Ltd., of Ottawa (Eugene P. Daugherity, of counsel), for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

Plaintiff, Beth Swierkosz, brought an action to recover damages for injuries she received when thrown from a horse rented from defendant, Starved Rock Stables. Plaintiff appeals the dismissal of two counts in her complaint which alleged negligence and a violation

of the Animal Control Act (Ill. Rev. Stat. 1989, ch. 8, par. 351 *et seq.*). We affirm the dismissal of both counts of the complaint.

We conclude (1) plaintiff failed to state a cause of action under the Animal Control Act, and (2) the exculpatory agreement signed by the plaintiff released defendant from liability for its alleged negligence.

Plaintiff was injured in July 1991 when she fell from a horse rented from defendant. Count I of plaintiff's three-count complaint was premised on common law negligence. Count III was brought pursuant to section 16 of the Animal Control Act, which provides:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." Ill. Rev. Stat. 1989, ch. 8, par. 366.

Defendant filed a motion to dismiss counts I and III of the complaint. (Ill. Rev. Stat. 1989, ch. 110, par. 2—619(9).) Defendant argued that an exculpatory agreement signed by the plaintiff released the defendant from liability for the negligence alleged in count I. Defendant further argued that the plaintiff was precluded from recovery in count III under the Animal Control Act pursuant to our supreme court's decision in *Harris v. Walker* (1988), 119 Ill. 2d 542, 519 N.E.2d 917.

Plaintiff filed counteraffidavits in response to the defendant's motion to dismiss. Plaintiff stated that in the months preceding the accident, she had ridden on two other occasions at Starved Rock Stables. She had no other "contact or familiarity" with horses. She knew horses would "buck and rear up as well as kick out with their hind legs." However, she was unaware that horses would suddenly jump to the side when spooked or startled. She "expected and anticipated that the horse she was riding would walk or trot in a straight line following the horse in front of it." She read and signed the exculpatory agreement on her first visit to the stables that summer. Thereafter, during her next two visits, she simply signed the exculpatory agreement without ever reading it.

The trial court granted defendant's motion to dismiss, and plaintiff appeals. Based upon our supreme court's decision in *Harris*, we first conclude that the trial court properly determined that the plaintiff failed to state a cause of action under the Animal Control Act.

> "[W]here a person rents a horse and understands and expressly accepts the risks of using the horse, he cannot recover damages from the person who rented the horse to him under section 16

of the Animal Control Act." *Harris v. Walker* (1988), 119 Ill. 2d 542, 548, 519 N.E.2d 917, 919.

The plaintiff in *Harris* was injured in a fall from a horse which he rented from defendant's riding stable. The plaintiff signed an exculpatory agreement relieving the defendant from liability that might be incurred "while on the premises or for any injury which may result from horseback riding." *Harris*, 119 Ill. 2d at 548-49, 519 N.E.2d at 919.

The plaintiff in *Harris*, like the plaintiff in the instant appeal, filed an action based on section 16 of the Animal Control Act and on a common law negligence theory. (*Harris*, 119 Ill. 2d at 545, 519 N.E.2d at 918.) In *Harris*, the supreme court reversed the appellate court and affirmed the trial court's grant of summary judgment for the defendant. Our supreme court determined that

> "the legislature intended only to provide coverage under the statute for plaintiffs who, by virtue of their relationship to the owner of the dog or other animal or the lack of any such relationship, may not have any way of knowing or avoiding the risk that the animal poses to them." (*Harris*, 119 Ill. 2d at 547, 519 N.E.2d at 919.)

The supreme court concluded that the plaintiff's act of contracting with the defendant to rent a horse established a relationship with the owner of the horse such that the plaintiff removed himself from the class of persons the legislature intended to protect. *Harris*, 119 Ill. 2d at 547-48, 519 N.E.2d at 919.

We recognize that our supreme court's holding in *Harris* may be premised in part on the fact that the plaintiff evidenced his understanding and acceptance of the risks of horseback riding by executing an exculpatory agreement prior to riding, and later confirmed his understanding in deposition testimony. (*Harris*, 119 Ill. 2d at 547-48, 519 N.E.2d at 919.) Assuming, then, as the instant plaintiff maintains, that her inexperience prevented her from a meaningful understanding of the risks of horseback riding and, further, that the exculpatory agreement she signed was ambiguous and unclear, we still conclude that no claim exists under the Act when a rider is thrown from a horse she has voluntarily mounted. *Ennen v. White* (1992), 232 Ill. App. 3d 1061, 598 N.E.2d 416.

█ The plaintiff in *Ennen* brought an action under the Animal Control Act for compensation for injuries she sustained when the defendants' horse threw her while she was riding the horse on defendants' property. The plaintiff in *Ennen* had not signed an exculpatory agreement. The appellate court affirmed the dismissal of her

amended complaint for failure to state a cause of action under the Act. The *Ennen* court reasoned that the plaintiff

> "should have recognized her conduct involved a risk, she should have known the qualities and habits of animals, and capacities of things and forces insofar as they are matters of common knowledge in the community. *This applies even if she was ignorant of the possibility Coke might throw her*. See Restatement (Second) of Torts §290, Comment *g*, at 50 (1965)." (Emphasis added.) (*Ennen*, 232 Ill. App. 3d at 1065, 598 N.E.2d at 419.)

The *Ennen* court concluded:

> "There is no legal or policy justification for extending the protections of the Act to a *rider* of a horse. Once the rider mounts the horse, the rider is no longer a bystander or observer but is someone who has asserted dominion over the animal and is an active partner with the animal in recreational activity. The rider assumes control and responsibility for the horse. While a cause of action may be stated under other theories of liability, there is none under the Act." (Emphasis in original.) (*Ennen*, 232 Ill. App. 3d at 1066, 598 N.E.2d at 419.)

Accordingly, following the analysis and reasoning of *Harris* and *Ennen*, respectively, we conclude that the trial court did not err in dismissing count III of plaintiff's complaint under the Animal Control Act.

Plaintiff next contends that the trial court erred in dismissing her common law negligence count based upon her execution of an exculpatory agreement. We disagree.

The supreme court in *Harris* "reaffirm[ed] that under certain circumstances exculpatory contracts may act as a total bar to a plaintiff's negligence claim." (*Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919.) The supreme court cited the general rule of enforcing exculpatory contracts " 'unless (1) it would be against a settled public policy of the State to do so, or (2) there is something in the social relationship of the parties militating against upholding the agreement.' [Citations.]" *Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919.

Our supreme court in *Harris* found the broad language of the release before it sufficient to encompass the plaintiff's injury. The court explained that the parties' failure to have considered the precise occurrence which resulted in the plaintiff's injury did not invalidate the exculpatory agreement. (*Harris*, 119 Ill. 2d at 549, 519 N.E.2d at 920.) The supreme court observed that "horseback riding involves

various risks of injury that are plain to experienced riders." (*Harris*, 119 Ill. 2d at 549, 519 N.E.2d at 919-20.) The court concluded:

"We believe that only the most inexperienced of horseback riders would not understand that under certain circumstances a horse may become spooked or 'side-shocked' and cause a rider to fall from the horse." *Harris*, 119 Ill. 2d at 549, 519 N.E.2d at 920.

We note that our supreme court in *Harris* did not find any public policy conflicting with its holding that the exculpatory agreement released the defendant from any negligence liability. The court also noted that the plaintiff voluntarily entered into the relationship with the defendant. *Harris*, 119 Ill. 2d at 549-50, 519 N.E.2d at 920.

Plaintiff concedes that our supreme court in *Harris* held an exculpatory agreement could be effective to relieve a defendant from liability. Plaintiff argues, however, that the release she signed was unclear and ambiguous, and therefore ineffective to release the defendant from liability. We find the plaintiff's focus is misplaced. The plaintiff dwells only upon certain individual phrases and sentences contained in the exculpatory agreement without focusing on the entire document. The obvious meaning of the release is derived from reading the entire agreement. We find that the release is clear and unambiguous. Accordingly, we hold that it is enforceable.

The release provided in pertinent part:

"Section II. Warnings and Assumption of Risk Agreement

A. I/We understand that horse back riding is classified as ADVENTURE RECREATIONAL SPORT ACTIVITY and that there are inherent elements of risk always present in any such activity despite all safety precautions. I fully accept such risk, some examples of which are listed as follows:

1. *** [I]t is not possible for any person or establishment to predict exactly how a horse will behave when it is frightened, angry or under stress; it may react according to its natural instincts which are to jump sideways, forward or backward ***.

2. Upon mounting a horse and taking up the reins the rider is in primary control of the horse ***. If a rider falls from a horse to the ground it will be a fall of from 3½ to 5 feet and impact will be according to physical law, possibly resulting in injury to a rider.

*  *  *

Section III. Release Agreement

A. I/We understand and agree that except in event of THIS STABLE'S gross negligence, I/We accept full responsibility for

bodily injury *** which [is] sustained by any member of my group so listed above, on or in relationship to the premises and operations of THIS STABLE and/or while riding or handling horses or other animals owned by same; and that I/We hereby, for myself ***, do hereby release and discharge the owners, operators, sponsors of the premises and their respective servants, agents, officers and all other participants of and from all claims, demands, actions and causes of action for same injuries *** ."

We first note that the cause—and even the effect—of the plaintiff's fall were precisely enumerated in the release as the risks which the plaintiff assumed when she rented the horse:

"[I]t is not possible *** to predict exactly how a horse will behave ***; it may react according to its natural instincts which are to jump sideways ***.

*** If a rider falls from a horse to the ground it will be a fall of from 3½ to 5 feet and impact will be according to physical law, possibly resulting in injury to a rider."

Therefore, we hold in the instant appeal that the plaintiff accepted the risk with full knowledge and appreciation of the danger.

The plaintiff further argues that she is not covered by the holding in *Harris* because she was an inexperienced rider. Even if we accept plaintiff's argument that she was inexperienced, we believe the supreme court's discussion of the plaintiff's experience in *Harris* was necessary because the release language there was broad and general. However, the plaintiff's experience here is less of a factor because the release specifically enumerated the risks of horseback riding. Also, we cannot ignore the fact that the plaintiff has admitted this was her third visit to the defendant's stables.

We conclude that the plaintiff's execution of the exculpatory agreement bars her recovery of damages under a negligence theory. The risks of horseback riding were clearly delineated in the release agreement. We find the trial court properly dismissed count III of the plaintiff's complaint.

For the reasons indicated, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SLATER and STOUDER, JJ., concur.