Rafael SANJUAN and Marcello A. Maviglia, Plaintiffs–Appellants,

v.

The AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, INC., and Stephen C. Scheiber, Defendants–Appellees.

No. 94–1585.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 25, 1994.

Decided Nov. 21, 1994.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Jan. 11, 1995.

---

Patricia L. Johnson, Chicago, IL (argued), for plaintiffs-appellants.

James W. Rankin, Kurt E. Stitcher (argued), Kirkland & Ellis, Chicago, IL, for defendants-appellees.

Before CUDAHY, ESCHBACH, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Psychiatrists Rafael Sanjuan and Marcello A. Maviglia passed written examinations and became eligible for certification by the American Board of Psychiatry and Neurology. Each took an oral examination administered by a panel of specialists under the Board's regulations; each failed. The Board will review a panel's conclusions if the applicant pays an appeal fee. Dissatisfied with the Board's procedures for internal appeals, Sanjuan and Maviglia filed this suit, which the

district court dismissed under Fed.R.Civ.P. 12(b)(6). 1994 U.S. Dist. LEXIS 2449, 1994–1 Trade Cas. ¶ 70,618. They contend that the Board's examination practices violate the Sherman Act, the due process clause of the fourteenth amendment, and numerous principles of state law.

When applying to the Board for certification, plaintiffs undertook to resolve any disagreements through the Board's internal processes:

I hereby release, discharge and exonerate the Board, its directors, officers, members, examiners, representatives and agents from any actions, suits, obligations, damages, claims or demands arising out of, or in connection with, this application, the grade or grades given with respect to the oral or written examinations or the failure of the Board to issue me [a] certificate. It is understood that the decision as to whether my examinations qualify me for a certificate vest solely and exclusively in the Board and that its decision is final.

Plaintiffs went back on their word, suing instead of accepting the outcome of the internal appeals. They complain about the high cost of the appeal (and of the application itself) without recognizing that costs would be higher still if disputes were resolved by the courts. The Board has spent far more than their application fees in defending this suit, which did not get past the pleadings stage. To fulfill its mission of identifying excellent specialists, the Board must disappoint others—for "when everyone is somebody, then no-one's anybody." W.S. Gilbert, in *The Gondoliers* (1889). The need to turn down many applicants implies a substantial risk of retaliatory litigation by physicians who esteem their abilities more highly than does the Board. Thus there may be substantial savings from bringing disputes back in house, and these savings redound to all applicants' benefits through lower fees.

■ Because the Board's headquarters are in Illinois, it submits—and plaintiffs agree—that Illinois law governs the validity of this release. Illinois enforces covenants not to sue (with an exception discussed at the end of this opinion). E.g., *Harris v. Walker,* 119 Ill.2d 542, 548, 116 Ill.Dec. 702, 704, 519 N.E.2d 917, 919 (1988); *Brady v. Prairie Material Sales, Inc.,* 190 Ill.App.3d 571, 575, 137 Ill.Dec. 857, 860, 546 N.E.2d 802, 805 (2d

Dist.1989). So do other states, and medical boards with headquarters outside Illinois have not encountered difficulty in enforcing stipulations similar to the ones plaintiffs signed. *Balaklaw v. American Board of Anesthesiology, Inc.,* 149 Misc.2d 11, 562 N.Y.S.2d 360, 362 (1990); *Gates v. American Board of Pediatrics, Inc.,* No. 87–5321 (E.D.La. Apr. 12, 1988), affirmed, 859 F.2d 918 (5th Cir.1988). We enforced a no-suit agreement among owners of major league baseball teams. *Charles O. Finley & Co. v. Kuhn,* 569 F.2d 527 (7th Cir.1978). Plaintiffs assert that the releases are unconscionable contracts of adhesion, but they are no more so than the other standards for application, including paying fees and passing tests. If the Board as a private organization is entitled to set the rules of application and membership, it is entitled to insist that applicants agree to a legal cease-fire. The alternative is higher application fees, which most physicians would prefer to avoid. An option to avoid the release by paying a surcharge is not likely to be attractive. Physicians who expect to pass, or who are satisfied with the Board's internal appeal processes, would not pay the premium for an option to litigate. A process of sifting would lead to a situation in which the set of persons wanting the option to litigate was very likely to *use* the option it had paid dearly for; in that event, however, the premium charged for a chance to litigate would approximate the Board's anticipated legal defense costs, making the option unattractive even to the most disgruntled applicants. Plaintiffs, at all events, did not offer to pay a higher fee to purchase a litigation option and therefore are in no position to complain.

■ Perhaps, however, the Board lacks authority to set its admissions criteria. If so, the release, as one requirement of making an application, would be in jeopardy. Illinois does not permit professional associations full sway over admissions criteria if membership is an "economic necessity." *Treister v. American Academy of Orthopaedic Surgeons,* 78 Ill.App.3d 746, 755, 33 Ill.Dec. 501, 507, 396 N.E.2d 1225, 1231 (1st Dist.1979). But both plaintiffs are successful practitioners, and in their reply brief they stoutly deny

that they are trying to make the showing required by *Treister*. (That case held that membership in the American Academy of Orthopaedic Surgeons is not an "economic necessity" for the practice of orthopaedic surgery; Illinois likely would say the same about Board certification for a psychiatrist.) Having forsworn the "economic necessity" route, plaintiffs offer two reasons why the Board lacks power to condition application on a promise not to sue.

■ One is that the Board is not a private association at all. According to plaintiffs, the Board is a "state actor," and the Constitution entitles them to more elaborate procedures than the Board provides. We agree with the district court, however, that the Board is a private association. It does not issue licenses to practice; it simply certifies achievement of a standard of excellence. It does not wield any state power and therefore need not use the procedures the due process clause requires of the government. *NCAA v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), held that the National Collegiate Athletic Association is not a state actor, even though it is the principal regulator of collegiate athletics and many of its members are state universities. Ours is an easier case, because the members of the Board are themselves private actors. That states make certification by the Board a prerequisite for some public positions does not convert the Board into a state actor, any more than a state's insistence that some employees have advanced degrees converts every college and university into a state actor. If the Board's certification processes are unreliable, that may be a reason why the state should not depend on them; public beliefs that they *are* reliable (and consequent willingness to rely) do not bestow governmental power on the Board. State and local governments are responsible for their own decisions, and persons aggrieved by those decisions must complain against their authors (the states themselves) rather than against the Board.

■ Antitrust is a different matter. It is designed to regulate how private parties arrange their affairs—to protect the public *from* how private producers regulate their

affairs. A bylaw of the Hardwood Manufacturers' Association committing the members to resolve all differences by appeal to the board of governors would not be effective in antitrust law, which is based on a suspicion that agreements among producers undermine the interests of consumers. Cf. *American Column & Lumber Co. v. United States*, 257 U.S. 377, 42 S.Ct. 114, 66 L.Ed. 284 (1921). A no-suit agreement may be one of the devices for shoring up a cartel. Consumers, strangers to such agreements, gain by turning producers against one another, the better to expose violations. That is the premise of the Supreme Court's conclusion that the doctrine of *in pari delicto* does not foreclose antitrust litigation. *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968). Producers may agree to arbitrate their antitrust disputes—certainly so for international transactions, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and likely so for domestic transactions, *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437 (9th Cir.1994). But the premise of these decisions is that the arbitrators are neutrals willing to apply antitrust principles. A contract transferring antitrust disputes not to a disinterested umpire, but to the board of directors of a producers' association, is antithetical to consumers' welfare. We therefore conclude that plaintiffs' release does not prevent them from making an antitrust claim in court.

■ Seeking to block the antitrust claim at the threshold, the Board invokes the rule that agreements between corporations and their employees, divisions, or subsidiaries are not the kind of "conspiracies" against which the antitrust laws are directed. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). The complaint names only two defendants: the Board and its executive director. So much for the antitrust claim, defendants insist. Plaintiffs reply that the Board and its employees have conspired with promoters of examination-review courses. Comes the rejoinder: argument in a brief does not count, and the complaint does not contain the facts

needed to establish either a conspiracy or an injury to consumers. Indeed, the principal theme of defendants' brief is that we must ignore their adversary's briefs and appendix because they advert to facts that do not appear in the complaint. Yet complaints need not contain elaborate factual recitations. They are supposed to be succinct. Fed. R.Civ.P. 8; *American Nurses' Association v. Illinois,* 783 F.2d 716 (7th Cir.1986). "Although a plaintiff may not amend the complaint on appeal to state a new claim, it may point to (or even hypothesize) facts consistent with the existing language of the complaint showing such an entitlement." *American Inter–Fidelity Exchange v. American Re–Insurance Co.,* 17 F.3d 1018, 1022 (7th Cir.1994) (collecting authority). Any need to plead facts that, if true, establish each element of a "cause of action" was abolished by the Rules of Civil Procedure in 1938, which to signify the radical change from code pleading also replaced "cause of action" with "claim for relief." See *Bartholet v. Reishauer A.G. (Zürich),* 953 F.2d 1073, 1078 (7th Cir.1992). One pleads a "claim for relief" by briefly describing the events. At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Matching facts against legal elements comes later. And after *FTC v. Superior Court Trial Lawyers Association,* 493 U.S. 411, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990), *American Society of Mechanical Engineers v. Hydrolevel Corp.,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982), and *National Society of Professional Engineers v. United States,* 435 U.S. 679, 98 S.Ct. 1355, 55 L.Ed.2d 637 (1978), no one could deny that the conduct of a professional association has some potential to violate the antitrust laws.

▮ What sinks plaintiffs' antitrust claim is not the skimpiness of their complaint but the information they provided in response to the district judge's probing. He asked counsel to specify what consumers, in what market, were injured by the Board's practices. Substantial market power is an essential ingredient of every antitrust case under the Rule of Reason. *Hardy v. City*

*Optical, Inc.,* 39 F.3d 765, 767 (7th Cir.1994); *Chicago Professional Sports Limited Partnership v. National Basketball Association,* 961 F.2d 667, 673 (7th Cir.1992); *Morrison v. Murray Biscuit Co.,* 797 F.2d 1430, 1435 (7th Cir.1986); *Will v. Comprehensive Accounting Corp.,* 776 F.2d 665, 670–74 (7th Cir. 1985). (Plaintiffs do not contend that the certification of medical professionals is illegal per se.) It is hard to see how the Board's activities could amount to an exercise of market power, which entails cutting back output in the market and thus driving up prices to consumers. *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.,* 784 F.2d 1325, 1335 (7th Cir.1986). After all, plaintiffs already are sellers in the market for psychiatric services; turning down their applications for certification does not remove their output from the market and therefore does not raise prices to consumers. Perhaps one could construct a theory that, by withholding certification from "deserving" specialists, the Board prevents consumers from shopping intelligently for psychiatric services—though that sounds more like a theory of deception than of anti-trust liability. See *Schachar v. American Academy of Ophthalmology, Inc.,* 870 F.2d 397 (7th Cir.1989). No matter; it is not the plaintiffs' theory.

When challenged, plaintiffs revealed that they want to show injury *to producers*. According to plaintiffs' brief, the Board's oral examination is especially hard on physicians born outside the United States (and for whom English is not their native language), with the result that these physicians' earnings fall short of their colleagues who were born in the United States. The claim that a practice reduces (particular) producers' incomes has nothing to do with the antitrust laws, which are designed to drive producers' prices down rather than up. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* —— U.S. ——, ———–——, 113 S.Ct. 2578, 2586–90, 125 L.Ed.2d 168 (1993); *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, it does not even

state an antitrust injury. *Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Intentional adverse decisions on the basis of physicians' ancestry might violate one of the anti-discrimination statutes. Plaintiffs do not allege intentional discrimination; they contend only that the oral examination has a disparate effect. At all events, the Sherman Act is not a precursor to the Civil Rights Act of 1964. It is aimed at protecting consumers from high prices. Plaintiffs, who want to obtain a credential that will help them charge higher prices, have pleaded themselves out of court on the antitrust claim.

One final subject requires a brief examination. Illinois does not enforce contracts exculpating persons from the consequences of their wilful and wanton acts. *Downing v. United Auto Racing Association,* 211 Ill.App.3d 877, 156 Ill.Dec. 352, 570 N.E.2d 828 (1st Dist.1991); cf. *Scheck v. Chicago Transit Authority,* 42 Ill.2d 362, 247 N.E.2d 886 (1969). Plaintiffs assert that the Board committed fraud and defamed them, which could fit the category "wilful and wanton." But we have no idea what the fraud consists in, because plaintiffs have not pleaded their claim with the particularity required by Fed.R.Civ.P. 9(b). See *DiLeo v. Ernst & Young,* 901 F.2d 624 (7th Cir.1990). As for defamation: the only statement the complaint mentions is that plaintiffs failed the oral exam, which happens to be true. This statement is not even defamatory, for the proposition "X is not among the best practitioners" does not imply that X is unfit for his profession. These claims, too, were properly dismissed on the pleadings.

AFFIRMED.