**John KING and Patricia King, Plaintiffs,**

v.

**CJM COUNTRY STABLES, Defendant.**

**No. CIV. 03–00240ACKBMK.**

United States District Court, D. Hawai'i.

Feb. 18, 2004.

David C. Schutter, Christopher A. Dias, Schutter Dias Smith & Wong, Honolulu, HI, for John King, Patricia King, plaintiffs.

Gale L.F. Ching, Mitzi A. Lee, Jane Kwan, Hisaka Stone Goto Yoshida, Cosgrove & Ching, Honolulu, HI, for CJM Country Stables, Inc., Doe Defendants 1–50, defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

This matter comes before the Court on Defendant CJM Country Stables' ("CJM" or "Defendant") Motion for Summary Judgment. The Motion for Summary Judgment argues that Patricia and John King (collectively, "Plaintiffs") signed a valid waiver that releases CJM from liability for the injuries Plaintiffs allegedly suffered when they participated in a recreational horseback riding activity provided by the Defendant.

### I. *Factual History.*

On September 16, 2001, Plaintiffs began an 11–night Royal Caribbean cruise sailing from Vancouver to and around the Hawaiian islands. On September 26, 2001, the cruise ship docked in Nawiliwili, on the Island of Kauai. That day, Plaintiffs participated in an organized horseback ride that they arranged through the shore excursion desk on board their ship.

Upon arriving at the stables, the horseback riding participants were asked to read and sign a form entitled "Participant Agreement, Release, and Acknowledgement of Risk," (hereinafter the "Release Form"). Both Plaintiffs signed this Release Form. (Motion for Summary Judgment, Exs. A, D). The Release Form provides, in relevant part, that "[i]n consideration of the services of CJM Country Stables, Inc." the signatory agrees "to release and discharge C.J.M., on behalf of [himself or herself] . . . as follows:

1. I acknowledge that horseback trailrides entails known and unanticipated risks which could result in physical or emotional injury, . . . to myself. . . I understand that such risks simply cannot

be eliminated without jeopardizing the essential qualities of the activity.

The risks include, among other things: ...horses, irrespective of their previous behavior and characteristics, may act or react unpredictably based upon instinct, fright, or lack of proper control by rider; latent or apparent defects or conditions in ... animals...; acts of other participants in this activity;... contact with plants or animals;...

Furthermore, C.J.M. guides have difficult jobs to perform. They seek safety, but they are not infallible.... They may give inadequate warnings or instructions, and the equipment being used might malfunction.

2. I expressly agree and promise to accept and assume all of the risks existing in this activity. My participation in this activity is purely voluntary, and I elect to participate in spite of the risks.

3. I hereby voluntarily release ... and hold harmless C.J.M. from any and all claims, demands, or causes of action which are in any way connected with my participation in this activity...including any such Claims which allege negligent acts or omissions of C.J.M....

I have had sufficient opportunity to read this entire document, I have read and understood it, and I agree to be bound by its terms."

Motion for Summary Judgment, Exs. A, D.

After signing the Release Forms, each of the riders was assigned a horse and proceeded on the trail ride. The parties agree that at some point during the ride Mrs. King was bitten by another rider's horse. Plaintiffs allege that as a result of this incident they have suffered severe and permanent bodily injuries, pain and suffering, past and future medical expenses, lost wages, and other special and general damages. Plaintiffs claim that Defendant's negligence was the proximate cause of these damages. Defendant argues that the signed Release Forms validly waive its liability for the Plaintiffs' alleged injuries.

## II. *Procedural History.*

Plaintiffs filed their Complaint in state court on February 27, 2003 and it was removed to this Court on May 14, 2003. The Complaint sets forth claims of: I. Negligence; II. Negligence Per Se; III. Strict Liability; IV. Intentional and Negligent Infliction of Emotional Distress; V. Loss of Consortium; VI. Punitive Damages; and VII. Respondeat Superior.

On January 14, 2004, CJM filed this Motion for Summary Judgment. The Motion for Summary Judgment argues that Defendant is entitled to judgment as a matter of law because the Plaintiffs signed a valid waiver of liability. Plaintiffs filed their Opposition to the Motion for Summary Judgment on January 30, 2004. The Opposition argues that the Motion for Summary Judgment should be denied because the Release Form is unenforceable as a waiver and in any event, does not include negligence claims. If the Court is inclined to grant Defendant's Motion for Summary Judgment, Plaintiff alternatively requests that the Court order a continuance of the motion pursuant to Federal Rules of Civil Procedure, Rule 56(f).[1] Defendant filed its Reply on February 5, 2004. The Reply argues that negligence is explicitly covered by the waiver. The Reply does not address Plaintiff's alternative request for a Rule 56(f) continuance.

## STANDARD

The purpose of summary judgment is to identify and dispose of factually unsup-

---

1. The Court need not address this alternative request because it is denying Defendant's Motion for Summary Judgment.

ported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] Fed. R.Civ.P. 56(c).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] *Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n,* 310 F.3d 1188, 1194 (9th Cir.2002) (quoting *Union Sch. Dist. v. Smith,* 15 F.3d 1519, 1523 (9th Cir.1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The moving party may do so with affirmative evidence or by " 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. All evidence and reasonable infer-

ences drawn therefrom are considered in the light most favorable to the nonmoving party. *See, e.g., T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). So, too, the Court's role is not to make credibility assessments. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Id.* at 250–51, 106 S.Ct. 2505.

Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec.,* 475 U.S. at 586, 106 S.Ct. 1348; *California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir.2002); *see also T.W. Elec. Serv.,* 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence tending to support the complaint." *T.W. Elec. Serv.,* 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

---

**2.** Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed.R.Civ.P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

**3.** Disputes as to immaterial issues of fact do "not preclude summary judgment." *Lynn v. Sheet Metal Workers' Int'l Ass'n,* 804 F.2d 1472, 1478 (9th Cir.1986).

## DISCUSSION

At issue in this Motion for Summary Judgment is whether the Release Form signed by Plaintiffs waives Defendant's liability for the Plaintiffs' alleged horseback riding injuries. Plaintiffs assert that the Release Form is unenforceable as a waiver and regardless, does not waive Defendant's liability for its own negligent conduct allegedly contributing to their injuries. Defendant claims that the Release Form constitutes a valid waiver of liability for Plaintiffs' alleged injuries because the form clearly lists the risks associated with horseback riding and the horse-biting incident at issue constitutes one of these risks. Defendant also argues that the waiver explicitly waives liability for negligence.

As movant, Defendant has the burden of establishing that it is entitled to judgment as a matter of law by showing that there are no genuine issues of material fact as to whether the Release Form validly waives its liability for the Plaintiffs' alleged injuries.

## I. *Hawaii Revised Statutes, Section 663–1.54.*

█ Although neither party cites or discusses it, the Court finds that Hawaii Revised Statutes, Section 663–1.54, addressing "Recreational activity liability," applies to this case. Section 663–1.54 provides:

(a) *Any person who owns or operates a business providing recreational activities to the public,* such as, without limitation, scuba or skin diving, sky diving, bicycle tours, and mountain climbing, shall exercise reasonable care to ensure the safety of patrons and the public, and *shall be liable for damages resulting from negligent acts or omissions of the person which cause injury.*

(b) Notwithstanding subsection (a), owners and operators of recreational activities *shall not be liable for damages for injuries to a patron resulting from* inherent risks associated with the recreational activity if the patron participating in the recreational activity voluntarily signs a written release waiving the owner or operator's liability for damages for injuries resulting from the inherent risks. No waiver shall be valid unless:

(1) The owner or operator first provides full disclosure of the inherent risks associated with the recreational activity; and

(2) The owner or operator takes reasonable steps to ensure that each patron is physically able to participate in the activity and is given the necessary instruction to participate in the activity safely.

(c) *The determination of whether a risk is inherent or not is for the trier of fact.* As used in this section an "inherent risk":

(1) Is a danger that a reasonable person would understand to be associated with the activity by the very nature of the activity engaged in;

(2) Is a danger that a reasonable person would understand to exist despite the owner or operator's exercise of reasonable care to eliminate or minimize the danger, and is generally beyond the control of the owner or operator; and

(3) *Does not result from the negligence, gross negligence, or wanton act or omission of the owner or operator.*

HRS § 663–1.54 (emphasis added).

### A. *Legislative History.*

There is no Hawaii case law interpreting Section 663–1.54. The Standing Committee that drafted Section 663–1.54, described its purpose and function as follows:

"[T]his measure is necessary to more clearly define the liability of providers of commercial recreational activities by statutorily validating inherent risk waivers signed by the participants. Your

Committee further finds that these inherent risk waivers ... do not extend immunity to providers for damages resulting from negligence."

Haw. Stand. Comm. Rep. No. 1537, in 1997 Senate Journal, at 1476. In substituting the provisions of Senate Bill 647 with those of House Bill number 581, which was codified into Section 663–1.54, the Standing Committee eliminated "the substantive provisions of S.B. No. 647, S.D.1, the Senate companion measure," including a section "[e]xempting the provisions of Chapter 663B, existing law regarding equine liability." *Id.*[4] Thus, equine activities, such as the one at issue here, are covered by Section 663–1.54.[5]

Subsection (c), providing that "[t]he determination of whether a risk is inherent or not is for the trier of fact," is pertinent to the resolution of this Motion for Summary Judgment. HRS § 663–1.54(c). Unfortunately, legislative materials specifically addressing this part of Section 663–1.54 are not helpful to this analysis as they consist of the following: "Now let me say that we have, and I supposed admirably, set out to define what inherent risks are in subsection (c), but whether this is sufficient is not clear." Debate on Haw. Stand. Comm. Rep. No. 753, in 1997 House Journal, at 408 (statement of Rep. Pendleton).

It is clear that given the statute's 1997 enactment and specific focus on exculpatory agreements made with those "who own[ ] or operate[ ] a business providing recreational activities to the public" that on the issue of written waivers, Section 663–1.54 supplants every single case on which the parties rely to make their substantive arguments. These cases, however, may be pertinent to other possibly relevant claims and defenses such as negligence and implied assumption of risk. Most of the cases cited were decided prior to the statute's enactment[6] and those that

---

**4.** Section 663B–2(a) provides: "In any civil action for injury ... of a participant, there shall be a presumption that the injury ... was not caused by the negligence of an equine activity sponsor ... or their employees or agents, if the injury ... was caused solely by the inherent risk and unpredictable nature of the equine. An injured person ... may rebut the presumption of no negligence by a preponderance of the evidence." HRS § 663B–2(a).

**5.** Section 663–1.54, addressing recreational activity liability, and Section 663B, addressing equine activities, are not mutually exclusive. Read together, these sections provide that a trier of fact must determine if injuries were caused by the "inherent risks" of a recreational activity. And if the trier of fact finds that the injuries were "caused solely by the inherent risk and unpredictable nature" of a horse, then there is a rebuttable presumption that the defendant's negligence did not cause the injuries. The injured plaintiff may then rebut the presumption of no negligence by a preponderance of the evidence.

**6.** *See Grbac v. Reading Fair Co.*, 688 F.2d 215 (3rd Cir.1982); *Wheelock v. Sport Kites, Inc.*, 839 F.Supp. 730 (D.Haw.1993); *Marshall v. Blue Springs Corp.*, 641 N.E.2d 92 (1994); *Huber v. Hovey*, 501 N.W.2d 53 (1993); *Masciola v. Chicago Metropolitan Ski Council*, 257 Ill.App.3d 313, 195 Ill.Dec. 603, 628 N.E.2d 1067 (1993); *Swierkosz v. Starved Rock Stables*, 239 Ill.App.3d 1017, 180 Ill.Dec. 386, 607 N.E.2d 280 (1993); *Buchan v. U.S. Cycling Federation, Inc.*, 227 Cal.App.3d 134, 277 Cal.Rptr. 887 (1991); *Dobratz v. Thomson*, 161 Wis.2d 502, 468 N.W.2d 654 (1991); *Guido v. Koopman*, 2 Cal.Rptr.2d 437 (1991); *Saenz v. Whitewater Voyages, Inc.*, 276 Cal. Rptr. 672 (1990); *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781 (Colo.1989); *Harris v. Walker*, 119 Ill.2d 542, 116 Ill.Dec. 702, 519 N.E.2d 917 (1988); *Kurashige v. Indian Dunes, Inc.*, 200 Cal.App.3d 606, 246 Cal. Rptr. 310 (1988); *Madison v. Superior Court*, 203 Cal.App.3d 589, 250 Cal.Rptr. 299 (1988); *Hulsey v. Elsinore Parachute Center*, 168 Cal. App.3d 333, 214 Cal.Rptr. 194 (1985); *McAtee v. Newhall Land & Farming Co.*, 169 Cal. App.3d 1031, 216 Cal.Rptr. 465 (1985); *Krohnert v. Yacht Systems Hawaii, Inc.*, 4 Haw. App. 190, 664 P.2d 738 (1983); *Hewitt v. Miller*, 11 Wash.App. 72, 521 P.2d 244 (1974); *Delta Air Lines, Inc. v. Douglas Aircraft Co.*,

were decided after 1997 do not address the effect of waivers on recreational activity liability as in Section 663–1.54.[7] Moreover, most of these cases do not interpret Hawaii law. Likewise, Defendant's citation to Section 663–10.95, addressing the liability of "motorsports facility" owners and operators, is inapplicable to this case. Motion for Summary Judgment, at 13 (citing HRS § 663–10.95). Based on the foregoing, the Court will apply Section 663–1.54 in resolving Defendant's Motion for Summary Judgment.

**B.** *Application.*

Under Section 663–1.54, the Court must deny Defendant's Motion for Summary Judgment for two reasons. First, Defendant argues that the Release Form validly waives Plaintiffs' negligence claims but Section 663–1.54(a) explicitly precludes waiving liability for negligence. Thus, paragraph three (3) of the Release Form is void as to negligence.

Secondly, Section 663–1.54(c)'s provision that the "determination of whether a risk is inherent or not is for the trier of fact" automatically creates a genuine issue of material fact as to whether the horse-biting incident was an inherent risk of the horseback riding activity in which Plaintiffs participated. This statutorily-imposed genuine issue of fact precludes summary judgment as a matter of law. The trier of fact will have to decide whether the Release Form constitutes a valid waiver of Defendant's liability.[8]

The Court finds that there are genuine issues of material fact as to: [1] whether Defendant was negligent; and [2] the Release Form's validity as a waiver of liability, which depends on whether the horse-biting incident was an "inherent risk" of the recreational activity that Defendant provided to Plaintiffs. Defendant cannot satisfy its burden and thus, is not entitled to judgment as a matter of law.

### CONCLUSION

The Court holds that there are genuine issues of material fact as to Defendant's negligence and as to whether the Release Form constitutes a valid waiver of Defendant's liability and accordingly DENIES Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

---

238 Cal.App.2d 95, 47 Cal.Rptr. 518 (1965); *Lee v. Allied Sports Associates, Inc.,* 349 Mass. 544, 209 N.E.2d 329 (1965); *Ciofalo v. Vic Tanney Gyms, Inc.,* 10 N.Y.2d 294, 220 N.Y.S.2d 962, 177 N.E.2d 925 (1961).

**7.** *Foronda v. Hawaii International Boxing Club,* 96 Hawai'i 51, 25 P.3d 826 (2001) (holding that primary implied assumption of risk, evidenced by a signed waiver and plaintiff's free participation in a boxing match, is a complete defense to claims of negligence where defendant's conduct is an inherent risk of the sports activity); *Fujimoto v. Au,* 95 Hawai'i 116, 19 P.3d 699 (2001) (finding contract waiving general partners and landowners' liability unenforceable where limited partners with unequal bargaining power

sought to recover their investment in limited partnerships formed to develop real estate).

**8.** The legislative history indicates that the statute's proponents did not aim for this result. *See* Ammie I. Roseman–Orr, Comment, *Recreational Activity Liability in Hawai'i: Are Waivers Worth The Paper On Which They Are Written?,* 21. U. Haw. L.Rev. 715, 743–44 (1999) ("From the legislative testimony, it is apparent that the industry did not intend, nor was it aware, that this new law might eliminate summary judgment determinations of whether waivers are valid.... Hawai'i's new recreational activity liability statute, championed by the activity providers to protect the industry has instead eroded the common law protection it otherwise enjoyed.").