WILLIAM GARRISON, Plaintiff-Appellant, v. COMBINED FITNESS CENTRE, LTD., Defendant-Appellee (AMS Strength Systems/Fitness Systems, Inc., *et al.*, Defendants).

First District (5th Division)   No. 1—89—0860

Opinion filed July 20, 1990.

Robert A. Clifford & Associates, of Chicago (Robert A. Clifford, Richard Rogich, and Robert P. Sheridan, of counsel), for appellant.

French, Kezelis & Kominiarek, P.C., of Chicago (Terry P. Selby, Russell P. Veldenz, and Lynn A. Hirschfeld, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, William Garrison (Garrison), appeals from an order of the circuit court of Cook County granting defendant, Combined Fit-

ness Centre, Ltd. (Centre), summary judgment. The other named defendants, AMS Strength Systems/Fitness Systems, Inc., and Greg Greer, individually and d/b/a Monster Gym Equipment, are not parties to this appeal.

The undisputed facts of the case are as follows.

In July 1983, Garrison became a member of Centre and thereupon began using its facilities and equipment for his regular regimen of exercise and body development. Garrison routinely "worked-out" for periods of 2 to 2½ hours, three to four days each week and weight lifting was part of his fitness program.

On March 12, 1985, at about 6:30 p.m. Garrison was exercising at the Centre, using the weight-lifting equipment provided for that purpose. As he prepared to lift a 295-pound bar from the bench press apparatus, he called to a friend to "spot" him. As he did so, the weighted bar rolled off the grooved rest at the top of the bench press and fell onto his neck. Garrison's trachea was crushed and he continues to suffer permanent and disfiguring injuries.

Garrison filed a complaint on May 5, 1986, an amended complaint on January 12, 1987, and a second amended complaint on September 14, 1987, charging that his injuries were proximately caused by the improper design of the bench press provided to him by Centre. In count I, Garrison alleged, among other things, that Centre "carelessly and negligently owned, operated, managed, maintained and controlled its health club facilities" because it provided a bench press which was not adequate or safe for its intended use. Count II was a strict liability in tort action against the other named defendants, alleging that they designed, manufactured, distributed or sold the defective bench press weight-lifting apparatus that had caused plaintiff's injuries. According to the complaint, the bench was defective because it lacked an L-shaped safety device for holding the bar in place and, instead, had a groove arrangement from which the bar could easily roll off.

On August 27, 1987, Centre moved for summary judgment, contending that an exculpatory clause contained within the membership agreement signed by plaintiff relieved Centre of all liability for injury arising out of the use of its facilities and equipment. A hearing was held on the motion on February 22, 1989, at which time the trial court ruled in favor of Centre and granted the summary judgment motion. A subsequent order entered on the judgment contained the language set forth in Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), making the order final and appealable.

The sole issue on review is whether the trial court correctly held that Centre's exculpatory clause was enforceable. Plaintiff argues that

the exculpatory clause was not intended to encompass or should not encompass, for public policy reasons, injuries proximately caused by defective equipment provided for a member's use. We agree with the trial court's conclusion and so we affirm the summary judgment order.

The exculpatory clause involved in the present case is as follows:

"It is further agreed that all exercises including the use of weights, number of repetitions, and use of any and all machinery, equipment, and apparatus designed for exercising shall be at the Member's sole risk. Notwithstanding any consultation on exercise programs which may be provided by Center employees it is hereby understood that the selection of exercise programs, methods and types of equipment shall be Member's entire responsibility, and COMBINED FITNESS CENTER shall not be liable to Member for any claims, demands, injuries, damages, or actions arising due to injury to Member's person or property arising out of or in connection with the use by Member of the services and facilities of the Center or the premises where the same is located and Member hereby holds the Center, its employees and agents, harmless from all claims which may be brought against them by Member or on Member's behalf for any such injuries or claims aforesaid."

Plaintiff contends that by signing the membership contract which contained the above exculpatory clause, he did not contemplate that he would be relieving defendant from liability for injury stemming from defective equipment and that the enforcement of an exculpatory clause in the context of a product liability action would be violative of public policy. We find plaintiff's arguments to be without substantive merit when viewed in context of current Illinois law.

■ According to Illinois law, a party may contract to avoid liability for his own negligence and, absent fraud or wilful and wanton negligence, the contract will be valid and enforceable unless: (1) there is a substantial disparity in the bargaining position of the two parties; (2) to uphold the exculpatory clause would be violative of public policy; or (3) there is something in the social relationship between the two parties that would militate against upholding the clause. (*Schlessman v. Henson* (1980), 83 Ill. 2d 82, 413 N.E.2d 1252; *Calarco v. YMCA* (1986), 149 Ill. App. 3d 1037, 501 N.E.2d 268; *Larsen v. Vic Tanny International* (1984), 130 Ill. App. 3d 574, 474 N.E.2d 729.) The rationale for this rule is that courts should not interfere with the right of two parties to contract with one another if they freely and knowingly enter into the agreement. *Harris v. Walker* (1988), 119 Ill. 2d

542, 548, 519 N.E.2d 917; *Larsen*, 130 Ill. App. 3d at 576.

■ By the same token, however, an exculpatory clause, to be valid and enforceable, should contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care. (*Calarco*, 149 Ill. App. 3d at 1040.) In this way the plaintiff will be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution. (*Neumann v. Gloria Marshall Figure Salon* (1986), 149 Ill. App. 3d 824, 827, 500 N.E.2d 1011; *Larsen*, 130 Ill. App. 3d at 578.) The precise occurrence which results in injury need not have been contemplated by the parties at the time the contract was entered into. (*Schlessman v. Henson*, 83 Ill. 2d at 86.) It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff. *Larsen*, 130 Ill. App. 3d at 576-77.

■ In the present case plaintiff's signature on the membership agreement was not obtained by fraud, nor did a special relationship or unequal bargaining position exist. (See *Harris v. Walker* (1988), 119 Ill. 2d 542, 519 N.E.2d 917.) Furthermore, the exculpatory clause could not have been more clear or explicit. It stated that each member bore the "sole risk" of injury that might result from the use of weights, equipment or other apparatus provided and that the selection of the type of equipment to be used would be the "entire responsibility" of the member.

■ ■ Garrison's deposition reveals that the Centre provided two types of bench presses, the one on which Garrison was injured, and another that contained the L-shaped safety device which plaintiff now contends should have been present on the defective bench press. Although Garrison was not a professional weight lifter, he was also no neophyte, having had instruction and experience in weight lifting. Because of his experience, Garrison was aware of the variation in the features between the two bench presses, he chose to use the bench press that did not contain the safety device and was injured. Additionally, Garrison was aware of the attendant dangers in the activity and, despite the fact that plaintiff now alleges that the bench press he used was unreasonably unsafe because it lacked a certain safety feature, the injury he sustained clearly falls within the scope of possible dangers ordinarily accompanying the activity of weight lifting. Unlike *Larsen*, Garrison's injury was of a type that would normally be contemplated by the parties at the time the contract was made and,

therefore, it clearly falls within the parameters of the exculpatory clause. The alleged defective design is more a function of the manner in which the injury occurred, which need not have been contemplated by the parties. *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 413 N.E.2d 1252.

As an aside we note that an exculpatory clause might not always function to relieve a defendant from liability stemming from its provision of defective equipment. Perhaps, if a plaintiff could show that the quality or integrity of the equipment provided was extremely inferior, supplying it to the public could be deemed wilful and wanton negligence. However, this was not alleged by plaintiff here, nor do the facts support such a claim.

■■ ■ We also find no validity in Garrison's claim that upholding an exculpatory clause in the context of a product liability action would be against public policy. First of all we note that, despite the fact that plaintiff brought a strict liability in tort action against other defendants, the suit against Centre was a negligence action. In fact, plaintiff could not have brought a product liability action against Centre because it is not a "seller" within the meaning of the statute. (Ill. Rev. Stat. 1987, ch. 110, par. 13—213(a)(4).) Furthermore, even if plaintiff had been able to bring such an action against Centre, our statutes provide a method whereby Centre, as a party who is not the manufacturer of the allegedly defective product, may defer liability to the manufacturer. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—621.) This statutory provision indicates a legislative intent to restrict, rather than expand, the concept of strict liability as to nonmanufacturing parties. Consequently, we do not feel that upholding an exculpatory clause to relieve a nonmanufacturing party from liability which may result from its negligence in purchasing and making available an allegedly defective product would be violative of public policy concerns.

The summary judgment granted to Centre by the circuit court is affirmed.

Affirmed.

COCCIA, P.J., and LORENZ, J., concur.