# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Hussein v. L.A. Fitness International, L.L.C., 2013 IL App (1st) 121426**

---

| | |
|---|---|
| Appellate Court Caption | SAHAL HUSSEIN, Plaintiff-Appellant, v. L.A. FITNESS INTERNATIONAL, L.L.C., d/b/a Pro Results, Defendant-Appellee. |
| District & No. | First District, Fifth Division<br>Docket No. 1-12-1426 |
| Filed | March 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's action against defendant fitness club for the serious injuries he suffered while using an assisted dip/chin exercise machine without supervision was affirmatively barred by the exculpatory clause of the contract he signed with the club and his contentions that the contract was unenforceable due to its wording or on public policy grounds were rejected. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-14683; the Hon. Randye A. Kogan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Robert A. Shipley, of Shipley Law Group Ltd., of Chicago, for appellant.

James M. Rozak and Rachel S. Nevarez, both of Wiedner & McAuliffe, Ltd., of Chicago, for appellee.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.

Justices Howse and Palmer concurred in the judgment and opinion.

## OPINION

¶ 1     The issue on appeal is whether plaintiff's negligence suit regarding serious personal injuries he suffered while using exercise equipment at a fitness club is barred, under Minnesota law, by an exculpatory clause in his contract with the club. The circuit court of Cook County determined the clause warranted the dismissal of plaintiff's first amended complaint with prejudice and the denial of his motion for reconsideration. Plaintiff contends the court misconstrued the contract and the law and failed to consider his affidavit establishing material questions which could not be resolved on the pleadings.

¶ 2     Plaintiff-appellant Sahal Hussein was a resident of Minneapolis, Minnesota, when he executed the contract at issue with defendant-appellee L.A. Fitness International, L.L.C., d/b/a Pro Results (hereinafter L.A. Fitness), the operator of a national chain of fitness clubs which is headquartered in Irvine, California. A choice-of-law clause in this written agreement indicates it will be governed and enforced in accordance with Minnesota law. Hussein filed suit in 2010 in Illinois, alleging that he was injured in 2009, at an L.A. Fitness facility located near downtown Chicago, at 1101 South Canal Street, while making unsupervised use of an "assisted dip/chin" exercise machine. The circuit court granted L.A. Fitness' motion to dismiss the pleading as factually insufficient and allowed Hussein to replead.

¶ 3     Hussein alleged the following in his single-count first amended complaint. On February 14, 2009, Hussein "became a client and patron" of L.A. Fitness by executing a fitness service agreement and paying certain fees. He visited the Canal Street location of L.A. Fitness on July 7, 2009, and was permitted to make unsupervised use of its exercise equipment. L.A. Fitness breached its duty of ordinary care to Hussein by failing to maintain and inspect its fitness equipment and by failing to "appropriately and properly" monitor, supervise, or instruct club members who used the equipment. As a result, while Hussein was using the upper and lower bars and movable and adjustable bench on an assisted dip/chin exercise machine, he fell, struck his head and body, and was rendered a quadriplegic. (There has been no discovery and thus no further description of the accident, injuries, or health care.) Hussein claimed damages in excess of $50,000.

¶ 4     The "Fitness Service Agreement and Release of Liability" attached to Hussein's pleading indicates it was a contract for a series of prepaid 30-minute personal training sessions.

However, L.A. Fitness' motion to dismiss provided the trial court with Hussein's general contract with the club, which was entitled "Membership Agreement" and bore the signature date of February 6, 2009, which was about a week before he bought the personal training sessions. Hussein acknowledged in the circuit court and again in his appellate brief that "[w]hen initially joining [L.A.] Fitness, [he] was provided with and signed" the membership agreement and entered into the fitness service agreement on February 14, 2009. In an affidavit attached to his response to L.A. Fitness' motion to dismiss, Hussein swore that when the accident occurred he was not exercising pursuant to the fitness service agreement and was not working with a personal trainer. Accordingly, the trial court's ruling was based on the membership agreement and did not rely on any part of the fitness service agreement.

¶ 5        Hussein's "multi-club" membership agreement states in pertinent part, "It is agreed *** you [the Buyer] are purchasing a membership from L.A. Fitness according to the terms on both pages of this Membership Agreement and the current Membership Policies and Club Rules and Regulations ('Agreement')." Also, "By signing this Agreement, Buyer acknowledges that Buyer *** has read and understands the entire Agreement including *** the Release and Waiver of Liability and Indemnity, [and] all other Additional Terms and Conditions on the reverse side hereof ***." The signature block at the bottom of this page dated February 6, 2009, contains the signatures of Hussein and an agent of L.A. Fitness. The following language appears on the reverse side of the page and is emphasized by a black frame and bold font:

"IMPORTANT: RELEASE AND WAIVER OF LIABILITY AND INDEMNITY. You hereby acknowledge and agree that Member's use of L.A. Fitness' facilities, services, equipment or premises involves risks of injury to persons *** and Member assumes full responsibility for such risks. *** Member hereby releases and holds L.A. Fitness *** harmless from all liability to Member *** for any loss or damage, and forever gives up any claim or demands therefore, on account of injury to Member's person or property, including injury leading to the death of Member, whether caused by the active or passive negligence of L.A. Fitness or otherwise, to the fullest extent permitted by law, while Member is in, upon, or about L.A. Fitness premises or using any L.A. Fitness facilities, services or equipment. *** Member has read this release and waiver of liability ***."

¶ 6        This quote is an excerpt from a paragraph which covers about one-third of the page. Hussein's affidavit indicates that when he joined L.A. Fitness by signing the membership agreement, the contents of the contract were not explained to him other than the provisions regarding payment and cancellation and he was not advised that the agreement included a release or waiver of liability.

¶ 7        Due to this exculpatory language, the circuit court granted L.A. Fitness' motion to dismiss Hussein's lawsuit and for the same reason denied his motion to reconsider the ruling.

¶ 8        Hussein's complaint was dismissed pursuant to section 2-619 of the Code of Civil Procedure, which governs the involuntary dismissal of a complaint based on certain defects, defenses, or other affirmative matters. 735 ILCS 5/2-619 (West 2010). The purpose of a section 2-619 motion is to dispose of issues of law and easily proved issues of fact at the outset of litigation. *Zerjal v. Daech & Bauer Construction, Inc.*, 405 Ill. App. 3d 907, 910,

939 N.E.2d 1067, 1071 (2010). A section 2-619 motion admits the legal sufficiency of the plaintiff's claim " 'and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim.' " *Zerjal*, 405 Ill. App. 3d at 910, 939 N.E.2d at 1071 (quoting *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 569-70, 778 N.E.2d 1153, 1160 (2002)). When ruling on a section 2-619 motion, a court must construe the pleadings and supporting documents in the light most favorable to the plaintiff. *Zerjal*, 405 Ill. App. 3d at 910, 939 N.E.2d at 1071. This appellate court's role is to review the dismissal *de novo* and determine whether the existence of a genuine issue of material fact should have precluded the ruling or, absent an issue of material fact, whether the dismissal was proper as a matter of law. *Zerjal*, 405 Ill. App. 3d at 910-11, 939 N.E.2d at 1071-72.

¶ 9 Appellant Hussein argues the membership agreement is confusing, that the fitness services agreement is similarly flawed, and that the two contracts are contradictory, do not reflect the clear format and language required by Minnesota law, and should not be enforced. He also contends the trial court failed to consider the affidavit he filed in opposition to the motion to dismiss and that his sworn statement substantiates that the contracts are defective and should have led to the conclusion that there are material issues which cannot be properly decided at the pleading stage. Based on these arguments, Hussein seeks reversal of the dismissal order. Appellee L.A. Fitness responds that the exculpatory language in the membership agreement is clear, consistent with Minnesota public policy, and enforceable as written, despite Hussein's purported failure to read and comprehend the language before he executed that contract. L.A. Fitness also contends the fitness service agreement should be disregarded as irrelevant in this instance.

¶ 10 We agree with L.A. Fitness that the fitness service agreement (regardless of its content) is not at issue and we decline to address Hussein's contentions about this contract. Hussein's affidavit and appellate brief indicate he was not working with a personal trainer or pursuant to the fitness service agreement when he was injured.

¶ 11 Before responding to his specific contentions about the membership agreement, we must address the parties' choice of law clause. A trial court's choice-of-law determination is a legal issue subject to *de novo* review. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 154, 879 N.E.2d 893, 898 (2007); see, *e.g.*, *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993). Illinois's public policy " 'strongly favors freedom to contract' " (*Harris v. Walker*, 119 Ill. 2d 542, 548, 519 N.E.2d 917, 919 (1988) (quoting *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72, 447 N.E.2d 400, 402 (1983)) and broadly allows parties to determine their contractual obligations. Restatement (Second) of Conflict of Laws § 187 cmt. e (1989). The primary objectives of contract law are to make it possible for parties "to foretell with accuracy what will be their rights and liabilities under *** [their] contract" and then protect the justified expectations that arise from that agreement. Restatement (Second) of Conflict of Laws § 187 cmt. e (1989). These two objectives are likely to be met when parties are allowed to choose the law that will govern the interpretation of their agreement. Restatement (Second) of Conflict of Laws § 187 cmt. e (1989). In Illinois, an express choice-of-law provision will be given effect where there is some reasonable relationship between the chosen forum and the parties or transaction

(*Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill. App. 3d 755, 759, 509 N.E.2d 751, 754 (1987)) and it is " 'not dangerous, inconvenient, immoral, nor contrary to the public policy of our local government' " (*Potomac Leasing*, 156 Ill. App. 3d at 758, 509 N.E.2d at 753 (quoting *McAllister v. Smith*, 17 Ill. 328, 334 (1856))).

¶ 12     We find there is a sufficient relationship with Minnesota. Hussein and L.A. Fitness executed the membership agreement in Minnesota while Hussein was residing there and the contract allowed him to use any branch of the national chain of health clubs. Hussein has neither confirmed nor denied L.A. Fitness' statement that he still resides in Minnesota. Hussein is not arguing that the Minnesota choice-of-law clause is improper.

¶ 13     The question then becomes whether enforcement of the exculpatory clause is contrary to the standards of our own jurisdiction. Illinois will not "interfere with the rights of two parties to contract with one another if they freely and knowingly enter into the agreement" (*Garrison v. Combined Fitness Centre, Ltd.*, 201 Ill. App. 3d 581, 584, 559 N.E.2d 187, 190 (1990)). They may allocate the risk of negligence as they see fit and rely on their agreement in the absence of fraud, willful and wanton negligence, or substantial disparity in their bargaining power, or the presence of some other factor in the social relationship of the parties which militates against upholding their agreement. *Garrison*, 201 Ill. App. 3d at 584, 559 N.E.2d at 189; *Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919. Exculpatory clauses may be broadly worded (*Harris*, 119 Ill. 2d at 549, 519 N.E.2d at 920), but must "contain clear, explicit, and unequivocal language referencing the types of activities, circumstances, or situations that [are encompassed]" (*Garrison*, 201 Ill. App. 3d at 585, 559 N.E.2d at 190). "In this way the plaintiff will be put on notice of the range of dangers for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution." *Garrison*, 201 Ill. App. 3d at 585, 559 N.E.2d at 190. "The precise occurrence which results in injury need not have been contemplated by the parties at the time the contract was entered into." *Garrison*, 201 Ill. App. 3d at 585, 559 N.E.2d at 190. "It should only appear that the injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff." *Garrison*, 201 Ill. App. 3d at 585, 559 N.E.2d at 190. Even so, "exculpatory clauses are not favored and must be strictly construed against the benefitting party, particularly one who drafted the release." *Harris*, 119 Ill. 2d at 548, 519 N.E.2d at 919 (quoting *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 395, 493 N.E.2d 1022, 1029 (1986)). Hussein does not suggest that enforcement of this particular exculpatory clause is contrary to Illinois law and we note that similar clauses enforced in this jurisdiction have completely barred negligence claims arising from recreational activities. Compare *Garrison*, 201 Ill. App. 3d 581, 559 N.E.2d 187 (enforcing release against health club member who sued health club alleging his trachea was crushed when a 295-pound weighted bar rolled and dropped off a bench press), *Neumann v. Gloria Marshall Figure Salon*, 149 Ill. App. 3d 824, 500 N.E.2d 1011 (1986) (enforcing release against health club member alleging she ruptured a lumbar disc using an exercise machine that was adjusted and activated for her by a health club employee), and *Owen v. Vic Tanny's Enterprises*, 48 Ill. App. 2d 344, 199 N.E.2d 280 (1964) (enforcing release against gymnasium member alleging her wrist was injured in slip and fall on smooth spot on shower room floor), with *Larsen v. Vic Tanny International*, 130 Ill. App. 3d 574, 474 N.E.2d 729

(1984) (ruling material questions of fact existed whether release fairly applied to health club member's claim she suffered internal injuries from breathing noxious combination of cleaning compounds). See also *Schlessman v. Henson*, 83 Ill. 2d 82, 413 N.E.2d 1252 (1980) (enforcing release in suit by amateur race car driver who sued speedway operator alleging injuries in a car crash precipitated by collapse of banked race track); *Hellweg v. Special Events Management*, 2011 IL App (1st) 103604, 956 N.E.2d 954 (enforcing release against bicycle racer who sued race organizers for alleged injuries from collision with juvenile bicyclist who was not participating in race on the " 'closed course' " of municipal streets); *Harris*, 119 Ill. 2d 542, 519 N.E.2d 917 (enforcing release against horseback rider who sued stables alleging rented horse became spooked and caused rider to fall from the horse). But see *Calarco v. YMCA of Greater Metropolitan Chicago*, 149 Ill. App. 3d 1037, 501 N.E.2d 268 (1986) (finding general language of release did not relieve recreation facility from liability for member alleging two fingers were fractured when metal weights fell from exercise equipment she was adjusting for another member).

¶ 14    Accordingly, we conclude that Minnesota law governs this contract and will next consider whether that state would enforce its terms. Our review discloses that Minnesota and Illinois share the same perspective on exculpatory clauses.

¶ 15    *Schlobohm* was a case of first impression in the Minnesota Supreme Court as to whether an exculpatory clause in "a health spa or gymnasium contract" should be invalidated on public policy grounds. *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 922 (Minn. 1982). About six months after joining the Spa Petite health club in Owatonna, Minnesota, plaintiff Schlobohm was injured while using a leg extension machine which required her to sit on the edge of a bench, place her ankles under a padded bar to which weights were attached by a pulley, and then lift her legs straight up until they were parallel with the floor. *Schlobohm*, 326 N.W.2d at 922. The plaintiff was lifting an unusually large weight when she felt a sharp pain in her back which forced her to stop her workout and obtain a series of chiropractic, orthopedic, and neurological treatments culminating in back surgery about four years later. *Schlobohm*, 326 N.W.2d at 922. Her membership agreement stated " 'all exercises and treatments and use of all facilities shall be undertaken by member at member's sole risk.' " *Schlobohm*, 326 N.W.2d at 921. The clause expressly exonerated the defendant health club from " 'any claims, demands, injuries, damages, actions or causes of action, *** arising out of or connected with the use of any of the services and facilities *** and from all acts of active or passive negligence.' " *Schlobohm*, 326 N.W.2d at 921-22.

¶ 16    Like the Illinois authority set out above, the Minnesota Supreme Court indicated that the public interest in freedom of contract is preserved by recognizing exculpatory clauses as valid, exculpatory clauses are not favored by the courts, they are strictly construed against the drafter, and if a clause lacks clarity or purports to release a party from liability for intentional torts or willful or wanton recklessness, then it will not be enforced. *Schlobohm*, 326 N.W.2d at 922-23.

> "The vice of ambiguous language is that it fails precisely and clearly to inform contracting parties of the meaning of their ostensible agreement. Because ambiguous language is susceptible to two or more reasonable meanings, each party might carry away from the agreement a different and perhaps contradictory understanding. In the context

of a release in connection with an athletic, health, or fitness activity, the consumer surely is entitled to know precisely what liability is being exonerated. A release that is so vague, general, or broad as to fail to specifically designate the particular nature of liability exonerated is not enforceable." *Anderson v. McOskar Enterprises, Inc.*, 712 N.W.2d 796, 801 (Minn. Ct. App. 2006) (applying *Schlobohm*).

¶ 17    The court determined the Spa Petite clause was unambiguous and that its broadly-worded release of " 'any claims *** from all acts of active or passive negligence' " was permissible in that it was limited to exoneration from liability for ordinary rather than intentional or willful negligence. *Schlobohm*, 326 N.W.2d at 921-23.

¶ 18    Even if a release clause is unambiguous in scope and limited only to negligence, a court must determine whether enforcement of the clause will contravene Minnesota public policy. *Schlobohm*, 326 N.W.2d at 923. Here we again point out the similarity between Illinois and Minnesota law. The Minnesota court considered whether (1) there was a disparity in bargaining power between the two parties (resulting in a compulsion to sign a contract containing an unacceptable provision) and whether the services could be obtained elsewhere, as well as (2) whether the services were so essential to the public, they were "a practical necessity." *Schlobohm*, 326 N.W.2d at 923-26. The first prong would indicate the membership agreement was an adhesion contract and the second prong would indicate the service being offered should be publically regulated instead of governed by the principle that parties may contract as they see fit. "By definition, an adhesion contract is drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Schlobohm*, 326 N.W.2d at 924. "It is a contract generally not bargained for, but which is imposed on the public for necessary services on a 'take it or leave it' basis." (Emphasis omitted.) *Schlobohm*, 326 N.W.2d at 924. The Minnesota Supreme Court found that the plaintiff could freely choose between becoming a member of Spa Petite subject to the provisions in the membership contract or not becoming a member and that the provision of gymnasium or health spa services was not an essential service that was offered on a " 'take it or leave it basis.' " *Schlobohm*, 326 N.W.2d at 924-25. "Nothing in the record indicates that [plaintiff] Schlobohm had been directed to participate in Spa Petite's program by any health adviser, nor that similar facilities offering similar programs were unavailable." *Schlobohm*, 326 N.W.2d at 925. Furthermore, "Even if there were a scarcity of facilities for gymnastic and reducing activities in the area, that fact alone would not create *** disparity of bargaining power." *Schlobohm*, 326 N.W.2d at 925. Continuing with its analysis, the court concluded: "It should have been obvious to anyone of Schlobohm's age, education and experience that an exercise program in a gymnasium bears with a certain risk of injury, and that by the exculpatory clause Spa Petite indicated clearly that it was unwilling to shoulder that risk for the relatively nominal membership fee it charged its members." *Schlobohm*, 326 N.W.2d at 925. Also, "Defendant, a private corporation, was under no obligation or legal duty to accept plaintiff as a 'member' or patron. Having consented to do so, it has the right to insist upon such terms as it deemed appropriate." (Internal quotation marks omitted.) *Schlobohm*, 326 N.W.2d at 926. The Minnesota court also indicated it was well-settled in Minnesota and elsewhere that enforcing an exculpatory clause in a contract regarding recreational activities

would not violate public policy. *Schlobohm*, 326 N.W.2d at 926. The Minnesota court specifically held that "the furnishing of gymnasium or health spa services is not an activity of great public importance nor of a practical necessity," and thus, there was no overriding public interest which would demand that the exculpatory language, entered into by two competent parties, should be disregarded. *Schlobohm*, 326 N.W.2d at 926. Accordingly, it declined to invalidate the release. *Schlobohm*, 326 N.W.2d at 926.

¶ 19    In our opinion, the *Schlobohm* release is remarkably similar to the language quoted above from Hussein's membership contract with L.A. Fitness and he has failed to identify any circumstances suggesting that he had no choice but to join L.A. Fitness and become subject to the broad exculpatory terms in the membership agreement or that enforcing this particular clause would contravene the public interest. The clause was clear, explicit, and unequivocally stated that the "Member's use of L.A. Fitness' *** equipment *** involves risks of injury," "including injury leading to the death of Member," and "Member assumes full responsibility for such risks." This language encompassed the most unfortunate circumstances that occurred on July 7, 2009, while Hussein was making unaided use of the exercise equipment at L.A. Fitness' Canal Street location in Chicago. Hussein was on notice of the range of dangers he was exposing himself to, that he had assumed the risk of injury, and that he should exercise a greater degree of caution in order to minimize those risks. Like Spa Petite, L.A. Fitness is a private corporation which was under no obligation or legal duty to accept Hussein as a member or client. Having agreed to accept him, it had the right to insist on the terms it deemed appropriate. *Schlobohm*, 326 N.W.2d at 926. Also, like plaintiff Schlobohm, Hussein voluntarily applied for membership in a private organization and agreed to the terms that came with that membership. *Schlobohm*, 326 N.W.2d at 926. Nothing about these parties or the provision of health club services suggests that the exculpatory terms should be negated.

¶ 20    Hussein contends, however, that there are certain "material defects" in the L.A. Fitness membership agreement which render the exculpatory clause unclear and unenforceable. For instance, he contends that before he executed the membership agreement, only the payment and cancellation terms were explained to him and he was not specifically advised that the contract included liability release language. He contends the location of the signature block should distinguish this contract from *Schlobohm*, since signatures are affixed on the front page of the agreement directly below language pertaining to the member's right to cancel. He also points out that the cancellation language is emphasized with a larger typeface. He contends the exculpatory paragraph should have had its own signature block indicating that the terms had been explained to and read and understood by the new club member. None of these arguments are persuasive, however. Hussein has not cited any authority indicating L.A. Fitness was under a duty to explain any part of the contract to him or that he can avoid the effect of the contract by claiming that he did not read or understand it before signing it. In fact, Minnesota law provides that except in instances of fraud or misrepresentation, a person who signs a contract cannot invalidate the agreement by claiming that he did not read it or thought that it contained different terms. *Malecha v. St. Croix Valley Skydiving Club, Inc.*, 392 N.W.2d 727, 731 (Minn. Ct. App. 1986) (declining to invalidate exculpatory clause where injured skydiving client claimed "he was not informed of the effect of the document before signing it" and "he did not thoroughly read the waiver and he claims he did not

understand its terms prior to signing it"); *Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982) ("In the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different."). Furthermore, at the top of the membership agreement, it is explicitly stated that Hussein was "purchasing a membership from L.A. Fitness according to both pages of this Membership Agreement and the current Membership Policies and Club Rules and Regulations." This sentence alerted Hussein to the fact that he was agreeing to terms printed on the reverse side of the page. Further down the first page, the fourth paragraph of the membership agreement stated that "[b]y signing this agreement" Hussein was acknowledging that he "has read and understands the entire Agreement including *** the Release and Waiver of Liability and Indemnity *** on the reverse side" of the page. Hussein has not distinguished the Minnesota cases which the trial judge cited indicating that the membership terms located on the reverse side of the contract are enforceable. See *Laurens Mills v. M.M.C., Inc.*, 159 N.W.2d 781, 785 (Minn. 1968) ("There appeared on the front of the order blank in this case a warning that the parties agreed to the provisions on the back ***."); *Brown v. State Automobile Insurance Ass'n*, 12 N.W.2d 712, 717 (Minn. 1944) ("the part above the insurer's signature refers to the policy provisions printed elsewhere"). In addition, the release paragraph itself is printed in bold font, is offset by a box around the entire paragraph, and is the most prominent provision on that page. We also emphasize that this language was not a minor clause buried in a lengthy or confusing contract. It covers about one-third of a page in this three-page contract. The membership agreement terms are printed on the front and back of a single page in a readable, normal-sized typeface or larger and the membership policies and club rules and regulations are printed on one side only in a similar, readable and normal-sized font or larger. Thus, the presentation, paragraph placement, and typeface are not grounds for repudiating the release clause.

¶ 21    Hussein also points out that the term "multi-club [membership]" and the subtitle "Release and Waiver of Liability" are undefined in the membership contract. We consider these terms to be self-explanatory. In any event, the contract does specify the "membership types" that L.A. Fitness offered to Hussein, including "Single" membership, which was described as "A single club membership valid only at the club of enrollment"; "Premier" membership, which was described as "A multi-club membership valid at L.A. Fitness clubs in all states, except 'Signature' clubs"; and "Signature" membership, which was described as "A multi-state membership valid at L.A. Fitness clubs in all states, including 'Signature' clubs." The contract referred readers to L.A. Fitness' website for complete and current club listings and locations. The fact that Hussein joined at a Minnesota club but was exercising in an Illinois club indicates he understood the significance of this contract language. We also fail to see a need for a definition of the words used in the subtitle, "Release and Waiver of Liability." Most importantly, Hussein has failed to identify and discuss any precedent which suggests these words should have been expressly defined and he has failed to explain how these supposed "material defects" are actually "material" to his claim, or "defects" in the agreement, or in any other way militate against enforcement of the explicit exculpatory language.

¶ 22    Hussein also unpersuasively argues that contract language releasing L.A. Fitness from

liability for "the active or passive negligence of defendant *or otherwise*" renders the contract ambiguous. (Emphasis in original.) The *Schlobohm* clause was broadly worded, in that it released " 'any claims, demands, injuries, damages, actions or causes of action, *whatsoever* \*\*\* and from all acts of active or passive negligence.' " (Emphasis added.) *Schlobohm*, 326 N.W.2d at 921-22. The Minnesota Supreme Court construed this to release only ordinary negligence. Another pertinent Minnesota case is *Malecha*, 392 N.W.2d at 728, which concerned a skydiving student who was injured when his parachute did not open properly after he jumped from a plane near Osceola, Wisconsin. A Minnesota appellate court concluded that a clause releasing the skydiving club from liability for " 'negligence implied or otherwise' " could have been interpreted to release more than negligent conduct, but was not ambiguous and unenforceable where the skydiving student was claiming only ordinary negligence. *Malecha*, 392 N.E.2d at 728. See also *Anderson*, 712 N.W.2d at 800-01 (following *Schlobohm* and indicating that language in a contract which attempts to exempt a party from liability for gross negligence or wanton conduct is unenforceable but does not defeat the release of ordinary negligence). It is clear that Hussein agreed to exonerate L.A. Fitness from liability for negligence, that being part of the express agreement he executed, and that he is alleging only ordinary negligence. Minnesota has already rejected Hussein's argument.

¶ 23    We acknowledge that upholding the health club's exculpatory clause in this instance leads to a harsh result. Nevertheless, the law dictates that we reject Hussein's contentions that this portion of the membership agreement is unenforceable due to its wording or on public policy grounds. We affirm the ruling of the circuit court that the contract affirmatively barred Hussein's lawsuit against L.A. Fitness.

¶ 24    Affirmed.