In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 21-1287

OSCAR MUNOZ and
MUNOZ SONS TRUCKING, LLC,

*Plaintiffs-Appellants,*

*v.*

NUCOR STEEL KANKAKEE, INC.,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-3451 — **Robert M. Dow, Jr.**, *Judge.*

---

ARGUED NOVEMBER 2, 2021 — DECIDED AUGUST 9, 2022

---

Before SYKES, *Chief Judge*, FLAUM and JACKSON-AKIWUMI,
*Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Oscar Munoz sued Nucor Steel Kankakee, Inc., for injuries he suffered while he was at Nucor's scrap metal facility. The district court granted summary judgment for Nucor after finding that Munoz's injuries were within the scope of a valid exculpatory clause that Munoz signed. We affirm.

**I**

Munoz is a truck driver with 20 years of experience. He established his own trucking company, Munoz Sons Trucking, LLC, and, in 2016, also became an independent contractor for Star Line Trucking. Companies contract with Star Line to haul a variety of materials to different locations, and Star Line hires independent contractors like Munoz to do the hauling. The companies pay Star Line for the hauling, and Star Line in turn pays Munoz for his services. Star Line dispatch tells Munoz about these hauling jobs a day in advance.

As an independent contractor for Star Line, Munoz began delivering scrap metal to Nucor's scrap metal yard in Kankakee, Illinois, around May 2016. At one point, he delivered scrap metal to Nucor every day; later it became once a week. Before he could enter Nucor's facility for the first time each year, Munoz signed a Gate Entry Agreement that contained an exculpatory clause releasing Nucor of any liability for any injuries sustained at the facility. Munoz signed the Agreement in June 2016, January 2017, and January 2018 (the Agreement at issue).

When hauling scrap metal to places like Nucor, Munoz sweeps his truck as a matter of course because the load leaves behind shavings, called turnings. Star Line requires its independent contractors to sweep out their trucks between loads. Nucor does not require drivers to sweep. Nucor nonetheless provides a dirt pile into which haulers sweep their trucks.

Nucor requires drivers to use a ladder or man door when climbing in and out of their truck beds at the dirt pile. The parties dispute whether, when drivers use a ladder (as opposed to a man door), Nucor requires them to use the ladder

Nucor provides, which is a rolling staircase, or gives them the option of using the ladder attached to their truck. Regardless, for his ladder or man door option, Munoz always used the rolling staircase provided by Nucor. Nucor performs no maintenance on the staircase and leaves it outside exposed to the elements. Nucor employees inspect the staircase whenever they use it, but not when haulers do.

In March 2018, Munoz delivered scrap metal to Nucor and then drove to the dirt pile as usual. Munoz climbed up the staircase to sweep his truck bed. But once he finished sweeping and started to climb down, the staircase broke at the wheel and axle—which turned out to be rusted—and he fell from the top of the staircase. Munoz injured his shoulder, which required surgery, and his lower back, which continues to cause him problems today.

Munoz filed a suit on behalf of himself and Munoz Sons Trucking against Nucor, alleging one count of negligence and one count of willful and wanton conduct for failure to maintain or repair the staircase.[1] Nucor argued that the exculpatory clause in the Agreement barred the claims. The parties filed cross-motions for summary judgment, and the district court ruled in favor of Nucor. Munoz and Munoz Sons Trucking appeal the decision.[2]

---

[1] Munoz also sued Material Control, Inc., the staircase's manufacturer, but they settled.

[2] Nucor argues that Munoz Sons Trucking is not a party to the appeal because the body of the notice of appeal did not name the company. But an appellant may specify the parties taking the appeal "by naming each one in the caption or body of the notice[.]" FED. R. APP. P. 3(c)(1)(A). The notice of appeal in this case lists Munoz and Munoz Sons Trucking in the caption. Therefore, the notice sufficiently informs all parties that Munoz Sons

## II

We review de novo a district court's decision on cross-motions for summary judgment. *Markel Ins. Co. v. Rau*, 954 F.3d 1012, 1016 (7th Cir. 2020) (citation omitted). We construe all facts and inferences in favor of the nonmoving party. *Id.* Summary judgment is appropriate when there is no genuine dispute of material fact. FED R. CIV. P. 56(a). "A disputed fact is only material if it 'might affect the outcome of the suit under the governing law.'" *Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001) (citation omitted).

Munoz advances three arguments for reversing the district court's summary judgment ruling: (1) the disparate bargaining power between the parties renders the exculpatory clause invalid; (2) Nucor's failure to maintain or repair the staircase was not within the scope of the exculpatory clause; and (3) Nucor's conduct was willful and wanton, so the clause is unenforceable in this case. None of these arguments carries the day.

All three arguments concern the exculpatory clause in the Gate Entry Agreement between Munoz and Nucor. Under Illinois law, exculpatory clauses are generally disfavored and are strictly construed against the benefitting party.[3] *Hamer v.*

Trucking is a party to this appeal. *See 1756 W. Lake St. LLC v. Am. Chartered Bank*, 787 F.3d 383, 385 (7th Cir. 2015).

[3] As this is a diversity case, "federal law governs procedure" and "state law applies to substantive issues." *Skyrise Constr. Grp., LLC v. Annex Constr. LLC*, 956 F.3d 950, 956 (7th Cir. 2020) (citations omitted). Neither party raises a conflict of law issue, so the applicable law is that of the state where

*City Segway Tours of Chi., LLC*, 930 N.E.2d 578, 581 (Ill. App. Ct. 2010) (citing *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 493 N.E.2d 1022, 1029 (Ill. 1986)). Nonetheless, "[a]bsent fraud or willful and wanton negligence, a contract's exculpatory clause will be valid and enforceable unless (1) the bargaining position of the parties reflects a substantial disparity, (2) enforcement violates public policy, or (3) the social relationship between the parties militates against upholding the clause." *Hawkins v. Cap. Fitness, Inc.*, 2015 IL App (1st) 133716, ¶ 18 (citation omitted).

## A

We first address Munoz's argument about bargaining power. Exculpatory agreements cannot be enforced if they are between parties with certain special relationships, such as employer-employee, or between the public and a public service (e.g., innkeeper, common carrier, public utility). *White v. Vill. of Homewood*, 628 N.E.2d 616, 619–20 (Ill. App. Ct. 1993) (citations omitted). Such provisions are also unenforceable if "there is such a disparity of bargaining power that the agreement does not represent a free choice on the part of the plaintiff, such as a monopoly or [where] a plaintiff [has no] reasonable alternative." *Id.* (citation omitted).

Relying on *White*, Munoz contends that his relationship with Nucor is like an employer-employee relationship. He argues that he had no choice in signing the Agreement because if he refused to sign, he would have been prohibited from delivering scrap metal to Nucor, thus losing a sizable portion of his business. Munoz notes that deliveries to Nucor accounted

the federal district court sits—Illinois. *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008) (citation omitted).

for 18% of his total income in 2018, 25% of his income during six months of 2018, and nearly 40% of his income in April 2018. But Munoz overstates his relationship with Nucor; Munoz is an independent contractor with Star Line, who is not a party to this case.

*White*, on the other hand, addressed a direct economic relationship between a potential employer and a job applicant. There, a job applicant was injured while taking part in a physical agility test for a position at the local fire department. 628 N.E.2d at 617. To participate in the test, she had to sign an exculpatory clause. *Id.* At 620. The court found that the relationship of a "potential employer and job applicant[] is akin to the relationship between an employer and employee," and that as a job applicant, the plaintiff was subject to an "economic compulsion," where she would not have qualified for the position without the agility test. *Id.*

Munoz would stretch *White*'s logic through several degrees of separation. Nucor does not pay Munoz; it does not even pay Star Line. Nucor pays Star Line's customer who sends the scrap metal, who in turn pays Star Line a fee for coordinating the delivery, who then gives Munoz a cut for the actual transportation. We do not agree that this type of attenuated relationship establishes such disparate bargaining power that would render Munoz's choice nugatory.

Munoz is more like the plaintiff in *Johnson v. Salvation Army*, who had multiple choices for a drug and alcohol rehabilitation program and actively chose to attend one that required signing an exculpatory clause. 2011 IL App (1st) 103323, ¶¶ 24–32. There, the court distinguished *White* because that case involved "employment, an essential economic necessity," while the defendant in *Johnson* offered the plaintiff

only rehabilitation services and not "the alleged necessities [of food and shelter] plaintiff argue[d] he was under an economic compulsion to acquire." *Id.* at ¶ 32. Munoz similarly does not adequately explain what core necessity required him to deliver only to Nucor. Munoz is an independent contractor who receives information about upcoming hauls a day in advance. Munoz's self-employment purportedly allows him to decide which jobs he wants to take. The evidence shows that he made many trips to facilities besides Nucor. He hauls glass and other materials, wholly separate from Nucor's industry. On this record, Munoz could choose to not haul scrap metal at all.[4] If Munoz had no meaningful choice in the jobs Star Line offered him (and there is no evidence in the record of this), perhaps that could be persuasive—but that would only concern the disparate nature of his relationship with Star Line, not Nucor. Munoz has not shown that the balance in his bargaining power with Nucor was so uneven as to vitiate the exculpatory clause.

**B**

Munoz's second argument is that his injuries were not foreseeable and therefore fell outside the scope of the exculpatory clause. Illinois courts have held that an exculpatory clause "constitutes an express assumption of risk wherein one party consents to relieve another party of a particular obligation." *Platt v. Gateway Int'l Motorsports Corp.*, 813 N.E.2d 279,

---

[4] As for Munoz's argument about the percentage of his income derived from deliveries to Nucor, Munoz does not cite any authority suggesting that a retrospective analysis of his income could establish a basis for uneven bargaining power. These statistics show that Munoz often delivered scrap metal to Nucor, but it does not follow that Munoz was compelled to do so.

283 (Ill. App. Ct. 2004) (citation omitted). Therefore, these agreements "must contain clear, explicit, and unequivocal language referencing the type of activity, circumstance, or situation that it encompasses and for which the plaintiff agrees to relieve the defendant from a duty of care." *Evans v. Lima Lima Flight Team, Inc.*, 869 N.E.2d 195, 203 (Ill. App. Ct. 2007) (citation omitted). The agreement, however, need not list every single potential risk; rather, "[t]he injury must only fall within the scope of possible dangers ordinarily accompanying the activity and, therefore, reasonably contemplated by the parties." *Id.* (citation omitted). Even exculpatory clauses with broad language are enforceable because the parties "contemplated [a] similarly broad range of accidents" surrounding the agreement. *Id.* (citation omitted).

Given this background, foreseeability "will often define the scope of an exculpatory agreement." *Platt*, 813 N.E.2d at 284 (citation omitted). As long as the plaintiff is "on notice of the range of dangers for which [they] assume[] the risk of injury" and therefore had the ability "to minimize the risks by exercising a greater degree of caution," the exculpatory clause will cover the activity. *Id.* (citation omitted). The court must determine based on the record "whether [the] plaintiff knew or should have known … [of the] risk encompassed by his release." *Hellweg v. Special Events Mgmt.*, 2011 IL App (1st) 103604, ¶ 7. The plaintiff's familiarity and experience with the activity is a factor in determining foreseeability. *See Harris v. Walker*, 519 N.E.2d 917, 920 (Ill. 1988) ("[O]nly the most inexperienced of horseback riders would not understand that under certain circumstances a horse may become spooked or 'side-shocked' and cause a rider to fall from the horse."); *Garrison v. Combined Fitness Centre Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct. 1990) ("Although Garrison was not a professional

weight-lifter, he was also no neophyte, having had instruction and experience in weight-lifting. Because of his experience, Garrison was aware of the variation in the features between the two bench presses, he chose to use the bench press that did not contain the safety device and was injured.").

Munoz relies on a handful of cases to show his injuries were not foreseeable, but each case is readily distinguishable. He first analogizes to *Hawkins*. There, the plaintiff was working out in front of a gym mirror that a maintenance crew had been repairing. 2015 IL App (1st) 133716, ¶¶ 5–6. When another patron bumped into the mirror, it fell onto the plaintiff. *Id.* The court found that neither party had contemplated that plaintiff would be injured by a mirror when the exculpatory clause was executed because gym patrons are not expected to exercise due care around mirrors and inspect them for stability. *Id.* at ¶¶ 22–25.

Relying on *Hawkins*, Munoz argues that Nucor should not expect him or any other visitor "to inspect with great particularity *every* aspect of the equipment." But *Hawkins* dealt with a piece of equipment (the mirror) that was tangentially related to the activity covered by the agreement (using gym equipment). The staircase here is not so tangential. Both parties agree that hauling scrap metal will always result in turnings in the truck's bed. Nucor designated a particular area for haulers to sweep their trucks for this reason. Moreover, because Nucor requires drivers to use a ladder or a man door, it provides a staircase so drivers can comply with the safety rules. Nucor expected drivers like Munoz to sweep their trucks before leaving the facility. And Munoz testified that he used the same staircase every time he visited Nucor's facility, which was daily for a couple of years. As a trucker for 20 years

who had been hauling to Nucor for two years before the accident, Munoz is not a novice. He is well-versed in the procedures of delivering scrap metal and the need to sweep his truck between hauls. Munoz is more like the plaintiff in *Garrison*, who had experience with the equipment yet was injured by a bench press, than the gym patron in *Hawkins* who was injured by the mirror. 559 N.E.2d at 190. Like the plaintiff in *Garrison*, Munoz was "no neophyte" and had experience and knowledge in the relevant activity. *See id.*

Munoz next points to *Locke v. Life Time Fitness, Inc.*, where the plaintiff alleged that the decedent suffered a heart attack at a gym and died due to the gym's negligence in failing to train its employees on how to handle emergencies. 20 F. Supp. 3d 669, 671 (N.D. Ill. 2014). The court found that the plaintiff was not simply suggesting that the death was the result of "several poor decisions," but rather that the gym's past conduct of failing to train employees was the cause. *Id.* at 673–74. That sort of failure to train, the court held, was not "within the scope of possible dangers ordinarily accompanying playing basketball at the [gym]." *Id.* at 674. It was not therefore within the scope of the exculpatory clause.

Munoz argues that Nucor's failure to maintain or repair the staircase is like the failure to train in *Locke*. But he ignores the crucial part of *Locke*: the failure to train in that case was not part of the normal activity associated with playing basketball. In Munoz's case, as discussed above, sweeping truck beds and using staircases are within the scope of haulers' activities at Nucor. Munoz used the ladder every day he visited the Nucor facility. He could examine the staircase on his own. Unlike in *Locke*, where the decedent had no ability to appreciate the employees' suitability to respond to an emergency,

Munoz had every opportunity to determine whether to use Nucor's staircase or another method to enter and exit his truck. In fact, he now has a man door that he uses instead of the staircase.

Munoz fares no better with the two slip-and-fall cases he offers for additional support. The plaintiff in *Watson v. LTF Club Operations Co., Inc.*, alleged negligence when he slipped on liquid in a bathroom when he could not see because the automated lights turned off. No. 1:17-cv-6465, 2018 WL 6696602, at *3 (N.D. Ill. Dec. 20, 2018). In *Offord v. Fitness International, LLC*, the plaintiff slipped on a basketball court because of water from a leaking roof. 2015 IL App (1st) 150879, ¶ 5. In both cases, the courts held the exculpatory clause did not bar these claims because the causes were separate from the activity normally at issue. *Watson*, 2018 WL 6696602, at *3 ("[I]t is not the type of danger that would be reasonably foreseeable to an individual signing up for a gym membership."); *Offord*, 2015 IL App (1st) 150879, ¶ 21 ("[P]laintiff could not possibly have foreseen or contemplated that a leak from a defective roof would cause his injury."). Again, the use of the staircase was plainly within the scope of the activity Munoz engaged in at Nucor's facility. *Offord* and *Watson* do not stand for the proposition that a tenuous chain of events can nullify an exculpatory clause. Rather, there must be another event that fundamentally changes the calculus; Munoz does not present evidence of any.

Finally, Munoz suggests that there is at least a genuine dispute of material fact about whether Nucor required drivers to use the staircase. Munoz testified there was a sign indicating haulers should use the staircase. However, Nucor's witness testified—consistent with the safety rules—that drivers had

to use any ladder or man door, and Nucor merely provided a staircase as an option. While this is a dispute, it is not material. Whether Nucor required Munoz to use the staircase or not, he still used it every time he swept his truck. In fact, if we assume that Munoz is correct— as we should at summary judgment— the fact that Nucor required him to use the staircase would undermine his own position; such a requirement would confirm that the use of the staircase is a foreseeable part of Munoz's activities at the facility. Climbing up and down the staircase was just one of the many activities Munoz engaged in at Nucor's facility, and we cannot find any superseding cause that would bring it outside the scope of the exculpatory clause.

## C

Munoz's final argument is that Nucor was willful and wanton in two different ways: (1) Nucor did not instruct its employees to inspect the staircase when visitors used it; and (2) Nucor failed to provide haulers with a warning to inspect the staircase. Both arguments fail because Munoz does not provide any evidence from which we can infer that Nucor had knowledge of the danger posed by its staircase or any facts indicating there was such a danger.

When a defendant has engaged in willful and wanton conduct, an exculpatory clause will not bar claims for injuries derived from such gross negligence. *Hawkins*, 2015 IL App (1st) 133716, ¶ 18 (citation omitted). There are two types of willful and wanton conduct in Illinois: intentional and reckless. *Kirwan v. Lincolnshire-Riverwoods Fire Prot. Dist.*, 811 N.E.2d 1259, 1263 (Ill. App. Ct. 2004) (citing *Poole v. City of Rolling Meadows*, 656 N.E.2d 768, 771 (Ill. 1995)). Munoz does not suggest that

Nucor's conduct was intentional, so we look only to the reckless prong.

Willful and wanton conduct is reckless if it is "committed with 'utter indifference' to or 'conscious disregard' for the safety of others." *Id.* (citations omitted); *see also Harris v. Thompson*, 2012 IL 112525, ¶ 41. The Illinois Supreme Court has provided two examples of reckless willful and wanton conduct: (1) "a failure, after knowledge of impending danger, to exercise ordinary care," or (2) "a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Am. Nat'l Bank & Tr. Co. v. City of Chicago*, 735 N.E.2d 551, 557 (Ill. 2000) (quoting *Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 405 (Ill. 1994)).

For failure to discover, Illinois courts require "[m]ore than mere inadvertence or momentary inattentiveness[.]" *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 149 (Ill. App. Ct. 2010) (citation omitted). Rather, the defendant must make "a conscious choice of a course of action with knowledge of facts which would alert a reasonable person to a danger to the safety of others from that course of action." *See Abruzzo v. City of Park Ridge*, 2013 IL App (1st) 122360, ¶ 83. And in willful and wanton cases involving defective conditions on land, Illinois courts have repeatedly looked for evidence of knowledge. *See e.g.*, *Sullivan v. City of Hillsboro*, 707 N.E.2d 1273, 1277 (Ill. App. Ct. 1999) (plaintiff had evidence that city actually or constructively knew of hazard of submerged pipe); *Mostafa v. City of Hickory Hills*, 677 N.E.2d 1312, 1320 (Ill. App. Ct. 1997) (plaintiff did not adequately plead willful and wanton conduct related to lagoon being too deep and too close to playground without any allegations of prior

complaints or accidents); *Ozuk v. River Grove Bd. of Educ.*, 666 N.E.2d 687, 692 (Ill. App. Ct. 1996) (collecting cases). In sum, the plaintiff must show that the defendant had knowledge of either the danger itself or facts that would imply there was a danger.

Munoz provides no evidence that Nucor had knowledge of the supposed danger of leaving the staircase outside and not repairing it, and no evidence that Nucor had facts that would inform it of the danger. Munoz highlights that Nucor required its employees to inspect the staircase but did not warn haulers to do the same. But that fact alone does not yield the conclusion that Nucor knew or should have known that the staircase was rusted. At most, this evidence shows that Nucor may have been inattentive or dilatory in its inspections. It does not support an inference that Nucor consciously disregarded Munoz's safety. Moreover, the record shows that Munoz's fall was the only incident in at least four years. There is no basis to infer that Nucor had information indicating the staircase was faulty but simply chose to ignore the problem. Absent evidence showing that Nucor had facts and then made a conscious decision to act in a way that put Munoz at risk, his claim for willful and wanton conduct must fall.

Munoz points to *Oelze*, where the plaintiff was playing indoor tennis, ran to the back of the court where there was a curtain, and tripped over a hidden rope ladder that had been left in the walkway behind the curtain. 927 N.E.2d at 141. The court found that there was a genuine dispute of fact because the record established that the defendant and its employees knew about the danger of "placing an object on the floor closely behind a court curtain, hidden from the view of tennis players using the court" and that one employee likely used

the ladder but could not remember if he or anyone else properly stored the equipment. *Id.* at 149. But as discussed above, the record in this case does not offer any facts that would provide a similar inference in Munoz's favor.[5]

## III

Nucor ignored the fact that leaving a staircase in the rain, sleet, and snow could lead to rusting and the eventual breakdown of metal. That conduct may have been negligent, but Munoz cannot escape the reach of the exculpatory clause he signed. We therefore AFFIRM the district court's decision.

---

[5] Munoz also invokes language in *Garrison* that "if a plaintiff could show that the quality or integrity of the equipment provided was extremely inferior, supplying it to the public" could be sufficient to establish willful and wanton conduct. 559 N.E.2d at 190. But *Garrison* was not decided on this ground. The court noted the possibility but concluded "this was not alleged by plaintiff here, nor do the facts support such a claim." *Id.* It is unclear when and how such an allegation would rise to the level of willful and wanton conduct under Illinois law. At most, *Garrison* might suggest that defective equipment available to the broader public could provide the basis for willful and wanton conduct. But that is not the case here. Nucor provides the staircase only to a limited group of business invitees.